Nos. 2022-1391, 2022-1425

# United States Court of Appeals
# for the Federal Circuit

FRESHUB, INC., FRESHUB, LTD.,
*Plaintiffs-Appellants*,

v.

AMAZON.COM, INC., PRIME NOW, LLC, WHOLE FOODS MARKET
SERVICES, INC., AMAZON.COM SERVICES LLC,
*Defendants-Cross-Appellants*.

—————————————

Appeal from the United States District Court for the Western District of Texas,
Case No. 6:21-cv-00511-ADA, Judge Alan D. Albright

—————————————

**PLAINTIFFS-APPELLANTS FRESHUB, INC. AND
FRESHUB, LTD.'S RESPONSE AND REPLY BRIEF**

—————————————

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700

*ATTORNEYS FOR FRESHUB, INC. AND FRESHUB, LTD.*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

COUNTER-STATEMENT OF THE ISSUES ON CROSS-APPEAL ...................3

SUMMARY OF ARGUMENT ...............................................................4

ARGUMENT ....................................................................................6

    I.    STANDARD OF REVIEW FOR THE ISSUES ON
CROSS-APPEAL ......................................................................6

    II.    AMAZON FAILED TO IDENTIFY ANY LEGALLY
SUFFICIENT EVIDENTIARY BASIS TO FIND NO
INFRINGEMENT SUCH THAT ENTRY OF JMOL IS
APPROPRIATE ......................................................................6

        A.    Amazon Did Not Have Any Evidence, Much Less
Substantial Evidence, of No Infringement of the
"Item" Element. ...........................................................7

            1.    Amazon has no evidence supporting its
mystery speechlet theory of non-infringement................9

            2.    Amazon has no evidence supporting Dr.
Johnson's absurd opinion for the Item
element..........................................................10

            3.    Dr. Johnson's only support for his opinions
are his unfounded beliefs that every Alexa
engineer is wrong when testifying about the
system they are responsible for ...........................12

        B.    Amazon's Alexa Receives Digitized Orders. ...........................15

        C.    Freshub Accused Amazon's Alexa Products,
which Include the Alexa Servers, of Infringing
the '153 Patent. ...........................................................18

    III.    A NEW TRIAL IS REQUIRED TO CORRECT THE
SIGNIFICANT PREJUDICE TO FRESHUB ...................................25

A.     Amazon's Closing Was False, Misleading and
          Prejudicial. ..................................................................26

B.     Amazon Made Prejudicial Calls to the Jury to
          Protect the U.S. Constitution and U.S. Companies. .................34

C.     Freshub Objected to Amazon's Improper
          Arguments. ..................................................................36

RESPONSE ON CROSS-APPEAL ...................................................................38

IV.    THERE IS NO CLEAR ERROR IN THE DISTRICT
          COURT'S DETERMINATION THAT AMAZON
          FAILED TO PROVE INEQUITABLE CONDUCT BY
          CLEAR AND CONVINCING EVIDENCE .....................................38

A.     The Finding that Ikan Made No Material
          Misrepresentations to Revive the '291 Application
          Is Not Clearly Erroneous. .........................................41

B.     The Finding that an Intent to Deceive Was Not the
          Single Most Reasonable Inference from the Facts
          Is Not Clearly Erroneous. .........................................45

C.     Amazon Cannot Support Its Collapsed Inequitable
          Conduct Claim with Findings It Did Not Request
          or Testimony It Did Not Present at Trial. .................52

CONCLUSION .........................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of G,*
11 U.S.P.Q.2d 1378 (Comm'r Pat. 1989)............................................................42

*3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.,*
228 F. Supp. 3d 1331 (N.D. Ga. 2017)..............................................................51

*Allergan Sales, LLC v. UCB, Inc.,*
No. 2:15-cv-01001-JRG-RSP, 2016 WL 8201783 (E.D. Tex. Nov. 2, 2016) ...........................................................................................................31

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985)..................................................................6, 41, 52

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ........................................32

*Baisden v. I'm Ready Prods., Inc.,*
693 F3d 491 (5th Cir. 2012) ..............................................................37

*Boundaries Sols. Inc. v. CoreLogic, Inc.,*
No. 5:14-cv-00761-PSG, 2014 WL 4954017 (N.D. Cal. Sept. 29, 2014) ...........................................................................................................33

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,*
15 F.3d 1573 (Fed. Cir. 1993) ...........................................................50

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,*
631 F.3d 1279 (Fed. Cir. 2001) ...................................................23, 24

*Centrak, Inc. v. Sonitor Techs., Inc.,*
915 F.3d 1360 (Fed. Cir. 2019) .........................................................24

*ClearValue, Inc. v. Pearl River Polymers, Inc.,*
668 F.3d 1340 (Fed. Cir. 2012) .........................................................23

*Colburn v. Bunge Towing, Inc.,*
883 F.2d 372 (5th Cir. 1989) .............................................................38

*CommScope Techs. LLC v. Dali Wireless Inc.*,
   10 F.4th 1289 (Fed. Cir. 2021) ........................................................23

*Endo Pharms. Sols., Inc. v. Custopharm Inc.*,
   894 F.3d 1374 (Fed. Cir. 2018) .........................................................6

*eTool Dev., Inc. v. Nat'l Semiconductor Corp.*,
   No. 2:08-cv-196-WCB, 2011 WL 12677158 (E.D. Tex. Dec. 12,
   2011) ..............................................................................................30

*Fontenot v. Mesa Petroleum Co.*,
   791 F.2d 1207 (5th Cir. 1986) ...............................................5, 41, 53

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998) .......................................................32

*Guile v. United States*,
   422 F.3d 221 (5th Cir. 2005) ...................................................6, 13, 17

*Hall v. Freese*,
   735 F.2d 956 (5th Cir. 1984) ...........................................................38

*Hartford-Empire Co. v. U.S.*,
   323 U.S. 386 (1945) .........................................................................29

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) ................................................................6, 46, 54

*Irvan v. Frozen Food Express, Inc.*,
   780 F.2d 1228 (5th Cir. 1986) .........................................................36

*In re Isbell Records, Inc.*,
   774 F.3d 859 (5th Cir. 2014) ......................................................27, 37

*King Instruments Corp. v. Perego*,
   65 F.3d 941 (Fed. Cir. 1995) ...........................................................29

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) .........................................................32

*Magnivision, Inc. v. Bonneau Co.*,
   115 F.3d 956 (Fed. Cir. 1997) ....................................................34, 35

*N. Telecom, Inc. v. Datapoint Corp.*,
    908 F.2d 931 (Fed. Cir. 1990) ............................................................28

*PIN/NIP, Inc. v. Platte Chem. Co.*,
    304 F.3d 1235 (Fed. Cir. 2002) .........................................................33

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017) ...........................................................23

*Reese v. Mercury Marine Div. of Brunswick Corp.*,
    793 F2d 1416, 1429, n. 11 (5th Cir. 1986) ........................................38

*Satornino v. Dep't of Veterans Affs.*,
    Case No. 94-3471, 1994 WL 567013 (Fed. Cir. 1994) ......................50

*Scanner Techs. Corp. v. ICOS Visim Sys. Corp.*,
    528 F.3d 1365 (Fed. Cir. 2008) .........................................................45

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .........................................................23

*Texas Com. Energy v. TXU Energy, Inc.*,
    413 F.3d 503 (5th Cir. 2005) .............................................................15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .......................................4, 39, 46, 47

*Waddington N. Am., Inc. v. Sabert Corp.*,
    No. 09-4883 (GEB), 2011 U.S. Dist. LEXIS 86632 (D.N.J. Aug. 5,
    2011) ...................................................................................................37

*Westbrook v. General Tire & Rubber Co.*,
    754 F.2d 1233 (5th Cir. 1985) ......................................................34, 38

*Whitehead v. Food Max of Miss., Inc.*,
    163 F.3d 265 (5th Cir. 1998) .............................................................34

**Statutes**

Patent Act ....................................................................................................29

**Other Authorities**

Fed. R. Civ. P. 50(b) ..............................................................................22, 23

Fed. R. Civ. P. 52 ....................................................................................21

Fed. R. Civ. P. 52(a)(6) ..........................................................................6

Fed. R. Civ. P. 52(b) ..................................................................4, 40, 52

Fed. R. Evid. 403 ...................................................................................34

Manual of Patent Examination Procedure (MPEP) ....................42, 48, 55

MPEP § 711.03(c) .............................................................................42, 49

United States Constitution ................................................2, 34, 35, 37, 38

# **INTRODUCTION**

Amazon's Alexa Devices, which connect to the Amazon Alexa servers in the cloud, receive orders from consumers for items like milk and bananas when a customer says "Alexa, add milk to my shopping list." This functionality reads exactly on Freshub's asserted '153 Patent claims in this case, as evidenced by, among other things, the admissions of Amazon's Distinguished Scientist and one of the primary creators of Alexa, Dr. Nikko Strom. In the face of overwhelming evidence of infringement, Amazon resorted to casting irrelevant aspersions on Freshub and its predecessor Ikan and using its paid expert to contradict the Amazon documents and engineer testimony before the jury proving infringement.

When Amazon's attempts to present its ultimately unsuccessful inequitable conduct case before the jury were rejected, Amazon turned to a different tactic— presenting a case before the jury that painted Freshub, Ikan, and the inventors as bad actors looking to cheat Amazon out of money by introducing irrelevant, highly prejudicial facts regarding the timing of the prosecution of the Asserted Patents— the same fundamental argument underlying Amazon's inequitable conduct defense. Amazon tries to justify its inflammatory accusations of wrong-doing by claiming that its repeated reference to the filing dates of the applications for the Asserted Patents has some legal relevance to its written description and willfulness defenses. But they do not. Neither defense required repeatedly comparing the filing dates of

1

the Asserted Patents with the release date of Alexa.  Amazon's motive in doing so, which it essentially admitted in its Response, was to improperly make the jury believe that contrary to the law and evidence, the United States Constitution and its constituents in this case had been wronged because Freshub had purportedly taken advantage of the patent system to make a quick buck off of Amazon—and only the members of the jury could stop it.

While neither the jury nor the district court agreed with Amazon's written description or inequitable conduct defenses, the jury was swayed to find in Amazon's favor on infringement by Amazon's inappropriate and highly prejudicial references to the availability of Alexa before the claims of the Asserted Patents were written, suggesting that Freshub was not entitled to recover anything from Amazon because of it.  All Amazon had to hang onto in the face of all of Amazon's own engineers and documents clearly demonstrated infringement, was its infringement expert, Dr. Johnson, who engaged in linguistic gymnastics.  He incredibly told the jury that the "orders" Amazon advertises you can place with Alexa are not actually "orders" and that the items Amazon advertises you can add to your shopping list are not actually "items," as required by the '153 Patent. Ultimately, because Amazon's own engineers at trial contradicted Dr. Johnson's testimony, Amazon has no evidence to support the jury's verdict.

## **COUNTER-STATEMENT OF THE ISSUES ON CROSS-APPEAL**

1.     Whether Amazon identified any clear error in the district court's findings of fact and conclusions of law finding no inequitable conduct based on the lack of evidence before it during the bench trial.

# SUMMARY OF ARGUMENT

There was no clear error in the district court's finding that there was no inequitable conduct in connection with the revival of a patent application that was inadvertently abandoned. The district court considered all the evidence properly submitted for the bench trial proceedings on inequitable conduct and found that Amazon failed to prove the two requisite elements of inequitable conduct, namely: (1) there was no misrepresentation to the Patent Office (Appx33-34), and (2) the "single most reasonable inference" from the facts was not there was no intent to deceive the Patent Office (Appx34-36). *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citation and quotation omitted).

Further, Amazon attempts to rely upon theories and evidence in its cross-appeal that it waived because it did not present them to the district court before it determined there was no inequitable conduct. Specifically, after Amazon lost on inequitable conduct at the bench trial, it improperly tried to add new theories and deposition testimony that it had not raised during the bench trial to convince the district court to change its determination and make findings never previously requested. *See* Appx17534-17539 (Freshub's Opposition to Amazon's Motion to Amend Findings under Fed. R. Civ. P. 52(b), detailing Amazon's improper new theories and evidence). Such arguments and evidence are deemed waived and not appropriate for consideration on appeal. Theories and evidence that was available

for the bench trial, but Amazon elected not to pursue, cannot be introduced after the fact to manufacture an argument to overturn the determination of no inequitable conduct. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (refusing to overturn judgment based on evidence raised post-trial that was available but not presented at trial and "new theories" about the evidence shown at trial) (citations omitted).

Because Amazon cannot show any clear error, there are no grounds to reverse the district court's findings of fact and conclusions of law that there was no inequitable conduct.

## **ARGUMENT**

## **I.  STANDARD OF REVIEW FOR THE ISSUES ON CROSS-APPEAL**

Amazon's cross-appeal seeks to relitigate the district court's factual findings on inequitable conduct, which "must not be set aside unless clearly erroneous" because the district court found no inequitable conduct at a separate bench trial. Fed. R. Civ. P. 52(a)(6).  This Court may not supplant the district court's findings with its own simply if "it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 n.16 (1982) (reasonable inference is not clear error even if evidence potentially supports other inferences).  The district court's findings and its ultimate legal conclusions are entitled to deferential clear error review.  *Endo Pharms. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1379 (Fed. Cir. 2018).

## **II.   AMAZON FAILED TO IDENTIFY ANY LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND NO INFRINGEMENT SUCH THAT ENTRY OF JMOL IS APPROPRIATE**

This is not a simple case of the battle of the experts, as Amazon suggests. Amazon's only expert, Dr. Johnson, contradicted Amazon's witnesses, documents, and common sense, such that his opinions had no support and thus should not have been considered in evaluating whether Amazon presented substantial evidence to support the non-infringement verdict.  *Guile v. United States*, 422 F.3d 221, 227

6

(5th Cir. 2005) (affirming JMOL because jury did not have substantial evidence to support its verdict despite testimony of expert witness because expert's testimony was contradictory and unsupported). After removing Dr. Johnson's unsubstantiated testimony from the overwhelming universe of evidence of infringement, nothing remains to support the jury's non-infringement verdict, and entry of JMOL is required to correct the jury's finding.

### A. Amazon Did Not Have Any Evidence, Much Less Substantial Evidence, of No Infringement of the "Item" Element.

There is no dispute about how Alexa adds items to a user's shopping list when it "performs the function of adding the spoken words" identifying an item "to the shopping list." Amazon's Response Br. ("AMZ Br.") at 12-14, 29. It is agreed that the user's words are received, digitized and transmitted by the Alexa Devices to the Alexa servers, where the ASR module converts the 1s and 0s into text so the NLU module can determine their intent and extract keywords. Freshub's Opening Brief ("OB") at 21-24, 34 (testimony of Amazon engineers Mr. Halim and Mr. Portman and its distinguished scientist, Dr. Strom, admitting infringement); *id.* at 33-34 (testimony of Freshub's expert Dr. Medvidovic); AMZ Br. at 29 (describing the add to list flow). Freshub presented evidence that the intents and words from the NLU module are sent by the Shopping Speechlet to the DynamoDB database where the item name is extracted, populated and displayed on the shopping list. Appx617-618 (305:14-306:4) (Dr. Medvidovic showing the location of

DynamoDB); Appx692-693 (380:5-381:2) (Dr. Medvidovic discussing the item type keyword he identified in the DynamoDB source code); Appx548-551 (237:1-239:3) (testimony of Mr. Halim confirming shopping list flow).  The Shopping Speechlet is the module within Alexa that handles all the things pertaining to shopping, including the shopping list.  Appx597-598 (285:14-286:12).

Further, there is also no dispute that Alexa does not attempt to find products from the Amazon.com catalog because neither the '153 Patent claims nor the shopping list feature requires it.  Appx1070 (712:5-8) (A9 is the search engine for Amazon.com); AMZ Br. at 29 (claiming only words are added to a user's list).  The claims of the '153 Patent only require the system to identify the item corresponding to the text, which is exactly what Freshub showed Alexa does when it populates and displays the item identified from the converted text of the order onto the user's shopping list.  Thus, Freshub presented substantial evidence of Alexa's infringing functionality.

Amazon cannot explain away the trial admissions from the creator and primary inventor of Alexa's voice recognition capability, Dr. Strom, who admitted that Alexa performs all the limitations of the '153 Patent.  Appx1028 (670:6-14) (Dr. Strom testifying how it was a "dream come true" to build something like Alexa from scratch); OB at 21-24 (showing Dr. Strom's admissions).  In the face of devastating admissions from Dr. Strom, Amazon resorted to claiming that their

vice president and distinguished scientist, who holds a master's degree in physics and a Ph.D. in speech technology, and is the one primarily responsible for creating Alexa and its voice recognition capabilities, has no idea how the system he created works. AMZ Br. at 33 n.10 ("He also testified that he would defer to others concerning how the shopping speechlet works."); *id.* at 32 (claiming that Dr. Strom was just "speaking colloquially" when testifying that milk is an item and it should be disregarded because he "works neither on Alexa Shopping nor the shopping list feature.").

### 1. Amazon has no evidence supporting its mystery speechlet theory of non-infringement

The evidence presented to the jury showed the Shopping Speechlet as responsible for the shopping list functionality, contrary to the claims of Amazon. AMZ Br. at 13-14, 29; Appx548-551 (237:1-239:3) (Mr. Halim explaining that the shopping list domain is a part of Alexa Shopping). Amazon's "wrong speechlet" theory is based upon the testimony of Mr. Love, who is not an engineer. Instead, Mr. Love testified he would defer these types of technical questions to engineers. AMZ Br. at 29 (citing, *inter alia*, Appx1062 (704:4-11) (Mr. Love's testimony stating "[t]he shopping List is not in the Shopping speechlet *per se*")); *see also* Appx1081-1082 (723:20-724:11) (admitting that because he is "not an engineer" Mr. Love would defer on these types of technical questions). Amazon has no support for this other speechlet theory in any of its source code, internal technical

documents, or testimony of the engineers actually responsible for Alexa.  In fact,

Mr. Love's own testimony that everything "Dr. Strom's team would do basically

routes it to the Shopping speechlet" entirely undercuts Amazon's reliance on Mr.

Love's testimony for its "wrong speechlet" argument.  Dr. Strom's testimony

related to how his team performs the functions of the Alexa shopping list feature,

meaning that even according to Mr. Love, the shopping list feature of Dr. Strom's

team is routed to the Shopping speechlet.  Appx1065 (707:3-16); OB at 21-24.

Thus, the testimony of the Amazon witness on which Amazon bases its "wrong

speechlet" argument actually confirms that the accused shopping list feature falls

within the Shopping speechlet.

### 2. Amazon has no evidence supporting Dr. Johnson's absurd opinion for the Item element

According to Amazon and Dr. Johnson, the plain and ordinary meaning of

"item" in the claims of the '153 Patent requires that a second computer system

somehow add a physical item to an electronic shopping list, rather than the word

representing that item.  AMZ Br. at 30-31 (describing Dr. Johnson's opinion that a

physical item must be added to the user's shopping list under the '153 Patent); OB

at 39 (describing how under this theory a physical gallon of milk needs be added to

the electronic shopping list).  To be clear, this is not an issue of claim construction,

but one of common sense.  This interpretation, whether from a person of ordinary

skill in the art or lay person, is nonsensical as items can only be identified as words

10

in electronic lists created under the '153 Patent and this is exactly what Alexa does:



Appx18154. Nothing in the '153 Patent requires physical items to literally be added onto an electronic shopping list, and Amazon plainly ignores that the disclosures it cites from the '153 Patent are directed to "information" associated with items, such as their names or other identifiers. AMZ Br. at 31. Thus, it is the words and not the physical items that are added, which Amazon acknowledges in their Response. *Id*. at 29 (explaining that there are "numerous examples" in the trial record of Alexa adding "spoken words" and not physical items).

It is undisputed that Alexa adds the word "apples" to a user's shopping list when it receives the phrase "Alexa, add apples to my shopping list." The only word from that phrase that could conceivably be an item is "apples" and that is the

only word that Alexa adds to the list.  Amazon's argument that it does not infringe

because "sad," "poopy-poop," and "unicorns in a can" are added to user's list,

despite them not being *per se* items in Amazon's catalog, ignores the countless

examples of undisputed items in Amazon's catalog that are added, such as milk,

apples, and bananas.  *See* AMZ Br. at 29-30.  But Amazon ignores that these words,

like "apples," are identified as the item to add to the shopping list within the

textual representation of the user's utterance.  Appx724-725 (412:11-414:14)

(citing Appx17995, Appx18002-18003); *see also* Appx682-683 (372:20-371:11);

Appx684-685 (372:2-373:6).  Furthermore, Freshub demonstrated at trial that

Alexa identified and returned catalog items or products for both "sad" and "poopy-

poop."  Appx1089-1091 (731:5-733:9) (showing that Alexa returns a product for

poopy-poop); Appx694 (382:8-17) (Alexa also returns a product for sad).  Thus,

the evidence all supports Freshub's infringement theory, and there is no substantial

evidence to support the jury's finding of non-infringement.  OB at 33-39.

### 3. Dr. Johnson's only support for his opinions are his unfounded beliefs that every Alexa engineer is wrong when testifying about the system they are responsible for

Despite Dr. Johnson admitting to using a "specialized" meaning for the word

"item," Amazon's Response shows why his testimony cannot be considered as

substantial evidence in support of the jury's verdict in any event.  Expert testimony

and opinion must be supported in order to be properly considered as evidence on

which the jury could have properly made its findings. *Guile*, 422 F.3d at 227; OB at 25-28 (identifying Dr. Johnson's baseless opinions). Amazon points to no such support in defense of Dr. Johnson.

Dr. Johnson disavowed every single Alexa engineer, including the creator of Alexa, as not knowing what they were talking about when testifying regarding the system they created or operate and what is an item. Appx1395-1397 (1037:25-1039:3) (stating Dr. Strom is wrong when testifying that Alexa identifies "milk" as an item); Appx1401-1402 (1043:6-1044:6) (stating Mr. Portman is wrong regarding the match element of the other asserted patents). Amazon has no technical documents supporting Dr. Johnson's opinion, and thus, has to resort to mischaracterizing its own technical documents. AMZ Br. at 33 (citing Appx17995). Amazon casts the document titled "Alexa Shopping List Metadata [VI]" as being limited to only the Whole Foods' application use case. *Id.* This characterization, however, ignores that the Whole Foods' application is just one of many use cases described in the 15-page document:

## Goal

The goal of this design document is to outline the features that would require metadata, discuss their requirements and how we provide a generic way to create, add and retrieve metadata for **ListItems**.

## Use case summary

Below we describe a summary of each use-case from our backlog. We consider 'Alexa Shopping Lists backend' as one component for illustration purposes.

*See* Appx17995-18009.  In fact, this document describes many use cases and system architectures, including those stemming from the Amazon Echo (one of the accused Alexa Devices), and identifies "milk" as an item (Appx17999).  *See id.* Appx17996-18009.

Remarkably, not only are all of the Amazon engineers and its technical documents wrong in Amazon's eyes, but so too is its website instructing users to "[b]uild your weekly grocery list with Alexa, then check off items in the Amazon app as you shop."  AMZ Br. at 34 (citing Appx18154).  Here, Amazon claims that although their website tells users to add items to their shopping lists, somehow no item is actually added.  *Id.*  In sum, the entirety of the support Amazon proposes for Dr. Johnson's non-infringement testimony regarding the Item Element is: (i) the testimony from the engineers responsible for creating, designing and operating Alexa is all wrong and they do not understand how their own system functions; (ii) the internal technical documents describing Alexa's shopping list feature are all wrong or do not actually have anything to do with the shopping list; and (iii) Amazon's website advertising that items are added to a user's shopping list is also wrong.  AMZ Br. at 29-34.  Because the only evidence of non-infringement that Amazon can muster is the contradictory and unsupported testimony from their paid expert (OB 33-39, 42-44 (explaining Dr. Johnson's inadequate testimony)), the district court should have found that no legally sufficient evidence of non-

infringement supports the jury's verdict for the Item Element, and entered JMOL

on that basis.

### B.    Amazon's Alexa Receives Digitized Orders.

Amazon's Response that the jury allegedly had substantial evidence to find

non-infringement based on the "Order" element is premised on a new and entirely

different plain and ordinary definition of the term "order" that was never actually

presented to the jury.  AMZ Br. at 34 (citing Appx1228-1230 (870:23-872:8)).

This new definition of "order" as one "for specific items recognized by the system"

should be disregarded because Amazon waived this theory that it never presented

to the jury.  *Texas Com. Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir.

2005) (affirming judgment and declining to evaluate arguments not raised before

the district court, which were waived).  Further, Amazon's new definition does not

support Amazon's argument that the jury had substantial evidence of non-

infringement of the "order" element—since Amazon never presented such an

argument to the jury, the jury could not have based its finding on it.

Dr. Johnson's definition of "order" at trial was that "the words you say are

specifically in order."  Appx1229 (871:19-20).  Amazon claimed at trial that the

Alexa Devices do not receive "orders" because they only receive "utterances."

Appx1408-1410; Appx1230 (872:13-16) ("the words that you say to Alexa are just

a bunch of words that could do anything, and the system doesn't know what they

are.  They are certainly not in order, right?").  This flawed argument fell apart

because Dr. Johnson admitted that "utterances" do in fact equate to an order.  OB

at 39-41; Appx1392 (1034:14-19) (Dr. Johnson's admission).

Thus, Amazon now tries to spin Dr. Johnson's testimony as defining "order"

as one "for specific items recognized by the system."  AMZ Br. at 34 (citing

Appx1228-1230 (870:23-872:8)).  Amazon pulled this new definition from thin air,

as the record does not even remotely support such a claim, including Dr. Johnson's

testimony that Amazon cites.  *Id.*  Dr. Johnson's trial testimony to which Amazon

points does not mention "specific items" or "recognition" by the system, as shown

here:

> So what that means is the ***words you say are specifically
> in order***.  That's really what the patent is talking about.
>
> So what you say is like bananas, right?  You reach and
> push that button, you say "bananas."  Or maybe if it's
> working really well, you could say "five bananas." But
> that's what's required.

Appx1229 (871:19-25) (emphasis added).  Contrary to Amazon's assertions, there

is nothing in this testimony requiring the system to recognize specific items, or

limiting it to only purchases, as Amazon also asserts.  AMZ Br. at 36-37

(suggesting that an order is only to purchase a product).  Thus, if the plain and

ordinary meaning of "order" is an "order for specific items recognized by the

system," as Amazon now contends, it cannot point to Dr. Johnson's testimony in support.

Further, Dr. Johnson and Amazon's star witness, Dr. Strom, admitted at trial that Alexa receives orders. Dr. Strom admitted the following:

> Q. The spoken order that's received by ASR, so the spoken order that we -- I was just asking you about, that comes into ASR --
> A. Yeah.
> Q. -- that's a digitized format, correct?
> A. Yes.

Appx1051 (693:4-9). Dr. Johnson admitted that in plain English, *i.e.* "English speaking," an utterance can be an order (Appx1392 (1034:16-19)) and that a user can place orders with Alexa (Appx1393 (1035:4-5) ("What this says is that you can place orders with Alexa, which, of course, you can do.")). Dr. Johnson's testimony amounts to an admission that the "orders" Alexa receives are a subset of the variety of utterances Alexa receives and can process. The fact that Alexa receives "just words" does not negate the fact that those words constituted an order when spoken by the user and received by Alexa. Further, because Dr. Johnson's testimony that the Alexa Devices do not receive orders had no support and he admitted on cross-examination that Alexa receives utterances which can be an order, there is no substantial evidence to support the jury's verdict. *Guile*, 422 F.3d at 227 (affirming JMOL because jury did not have substantial evidence to

17

support its verdict despite testimony of expert witness because expert's testimony was contradictory and unsupported).

Additionally, Amazon's argument that "Alexa receives . . . a digital representation of *anything* a user says" runs afoul of Amazon's Motion *in Limine* No. 4, that sought to preclude evidence regarding Alexa's recording and transmitting of all conversations within range of its devices.  AMZ Br. at 36 (emphasis in original); Appx14370-14371; Appx4.  In the motion, Amazon asserted that any testimony or evidence regarding the Alexa Devices recording and sending anything a user says within range of its microphone is incorrect, and would also be irrelevant and prejudicial at trial.  Appx14370-14371.  Yet this is exactly what Amazon now claims as a non-infringement position, stating that Alexa receives a "digital representation of *anything* the user says," not just orders.  AMZ Br. 35-36 (emphasis in original).  Therefore, Amazon's claim that Alexa cannot infringe because the Alexa Devices just blindly receive, digitize and transmit anything spoken to the Alexa Servers is without merit and directly contradicted by Amazon's Motion *in Limine* No. 4 claiming that the Alexa devices are not listening to everything a user says.  Appx14370-14371.

### C.    Freshub Accused Amazon's Alexa Products, which Include the Alexa Servers, of Infringing the '153 Patent.

There is no substantial evidence supporting the argument that Freshub did not properly accuse Alexa in this case.  The pretrial order states that Freshub

18

accused "Defendants' Alexa technology" through the individual Amazon Echo,

Fire TV, and Fire Tablet devices that all use and connect with the Alexa system:

> Defendants make, use, sell, offer for sale and import
> products that use Defendants' Alexa technology that are
> accused of infringing the Asserted Patents. Defendants'
> products accused of infringement are as follows
> (collectively "the Accused Products")[.]

*See* Appx16349-16350 (Final Pretrial Order listing the accused models of

Amazon's Echo, Fire TV, and Fire Tablet Products and stating "all of which

include Alexa"); OB at 28-33. This is exactly how Amazon advertises and sells

Alexa—***the Alexa Devices are all sold with Alexa***:



Appx18175 (highlighting added); *see also* OB at 29-30 (citing Appx18175,

Appx18191, Appx18205, Appx18217 showing the Alexa Devices all being sold

with Alexa).  As the final pre-trial order shows, Freshub accused the combination

of the Alexa Devices with the Alexa technology powered by the Alexa servers of

infringing.  Freshub's expert also testified that Freshub was accusing the Alexa

Devices with the Alexa servers of infringement.  OB at 29.

First, there is no dispute that Claims 1 and 6 of the '153 Patent require two

distinct systems each containing non-transitory memory each with instructions: (1)

the "first system" for capturing, digitizing, and transmitting a user's voice orders;

and (2) a second remote "computer system" for receiving, processing, and

displaying the voice orders.  AMZ Br. at 38 (admitting that Claims 1 and 6 of

the '153 Patent recite two distinct computer systems); OB at 29-32 (showing how

Amazon meets these limitations).  Second, it was undisputed at trial that Alexa is

made of two distinct systems, the first being the Alexa Devices which capture,

digitize, and transmit a user's voice order, and the second being the Alexa Servers

which are computers with memory for receiving, processing, and displaying a

user's voice order.  *See* OB at 28-32 (explaining the substantial evidence showing

that Alexa infringes the "first system" limitations with its Alexa Devices and the

second "computer system" limitations with its back-end servers); Appx1387-1388

(1029:6-1030:11) (Dr. Johnson admitting that the Alexa Devices infringe the first

system claim limitation); Appx1048-1049 (690:21-691:3) (Dr. Strom admitting the Alexa servers are computers that contain memory).  Thus, the jury only had evidence before it supporting Alexa's infringement of the "first system configured to receive user spoken words" by the Alexa Devices and the second "computer system . . .[comprising] non-transitory memory that stores instructions" by the Alexa Servers.

Notwithstanding its post-trial attempts, Amazon cannot explain away the testimony of Dr. Strom and Dr. Johnson that supports Freshub's showing that Alexa infringes the second computer limitation.   Indeed, Amazon's premise on appeal concedes that Alexa is made of two separate computer systems that each contain their own unique non-transitory memory components with instructions, the Alexa Devices and Alexa Servers.  AMZ Br. at 37-41 (arguing that Freshub only accused the Alexa Devices without accusing the Alexa Servers); Appx17575-17576 (Amazon's Response to Freshub's Rule 50 Motion arguing that the "accused devices do not contain the accused 'non-transitory memory' . . . or practice any server-side steps").

Here again, Amazon attempts to re-write the trial transcript in attempt to find support for non-infringement of the'153 Patent, but does so using testimony and evidence related solely to a different invention claimed in Claim 30 of the '408

Patent.[1]  AMZ Br. at 40 (citing Appx1227 for the discussion regarding the physical

components of the Alexa devices and Dr. Medvidovic's testimony regarding Claim

30 of the '408 Patent).  Claim 30 of the '408 Patent is a claim for "[n]on-transitory

memory" for storing instructions that cause the servers to perform certain

operations.  Appx108-109.  In contrast, Claims 1 and 6 of the '153 Patent are for a

voice processing system, which comprises two subsystems, both of which contain

their own non-transitory memory for storing certain instructions.  Appx68-69.  The

exchange on which Amazon relies between Amazon's counsel and Dr. Medvidovic

regarding Claim 30 of the '408 Patent focused on whether the memory component

that contains instructions for the Alexa Servers is physically found within the

Alexa Devices themselves, to which Amazon was inappropriately trying to limit

Freshub's infringement claims.  Appx672-679 (360:24-367:8) (Dr. Medvidovic's

cross-examination on Claim 30 of the '408 Patent and the location of the non-

transitory memory on the Alexa Servers).  This is just a rehash of Amazon's

argument that Freshub only accused the Alexa Devices, not the Alexa servers, and

as such the Alexa Devices were required to contain the server's memory in order to

infringe Claim 30 of the '408 Patent.  But that discussion is irrelevant to

infringement of the '153 Patent because the '153 Patent claims require two

---

[1] At trial, the '408 Patent was referred to as the Shopping Cart patent and involved
evidence and testimony showing infringement separate from the evidence of
infringement for the '153 Patent.

separate systems, both containing their own non-transitory memory, such that the location of the server's non-transitory memory on the server satisfies the claim limitation. Because this argument too is premised on Amazon's theory that Freshub did not accuse the Alexa servers with the Alexa Devices, it fails for the same reasons as discussed above.

Finally, Amazon's purported *Centillion*[2] defense premised on the fact that Amazon is not the final assembler of all the claim elements (AMZ Br. at 41-42) is waived because Amazon did not argue it in opposition to Freshub's renewed Rule 50(b) motion. Appx17565-17592; *see also Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 661 (Fed. Cir. 2017) (agreeing that plaintiff waived an argument by not raising it in opposition to defendant's Rule 50(b) motion); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343-44 (Fed. Cir. 2012) (where party's opposition to Rule 50(b) failed to raise argument the party could not argue it on appeal). Any attempt to suggest that footnote 3 of its opposition to Freshub's Rule 50(b) motion (Appx17576) somehow raises the issue is insufficient because "arguments raised in footnotes are not preserved" on appeal. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citations omitted); *see also CommScope Techs. LLC v. Dali Wireless Inc.,* 10 F.4th 1289, 1296 (Fed.

---

[2] AMZ Br. at 41-42 (citing *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011)).

Cir. 2021) ("[A]n argument that is only made in a footnote of an appellant's brief is forfeited.").

In any event, even if Amazon's users combine the infringing elements, Amazon is still liable as the direct infringer because Amazon makes the infringing system. Indeed, the evidence showed that the Alexa Devices come programmed with code allowing them to only connect with the Alexa Servers and without this connection, they are just a glorified paper weight (Appx675-676), such that Amazon is the final assembler of the infringing system. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) (finding Sonitor "made" the claimed system because "the final, missing elements are the configuration that allows the location transmitters to work with the network and the location codes that are entered into the Sonitor server"). Therefore, *Centillion* does not apply to relieve Amazon of infringement. *Id.* (holding that *Centillion* does not disturb CenTrak's final assembler theory). Notwithstanding Amazon's infringement liability under a "make" theory, Amazon is also the direct infringer under a "use" theory because Amazon provides instructions for the user to follow in order to combine all elements necessary to use the system in an infringing manner. Because Amazon provides instructions to users on how to assemble the infringing Alexa system and the Alexa Devices come with specific code allowing it to only connect with the Alexa Servers, there is no evidence, let alone substantial evidence

24

to support the jury's non-infringement verdict as to the "non-transitory memory"

elements.  Therefore, reversal of non-infringement for this limitation is warranted.

## III.    A NEW TRIAL IS REQUIRED TO CORRECT THE SIGNIFICANT PREJUDICE TO FRESHUB

Prior to trial, Freshub warned the district court that Amazon was going to

use the irrelevant filing dates of the Asserted Patents to unfairly prejudice the jury

against Freshub, confuse the issues and mislead the jury by suggesting that

Freshub's patent applications filed after Alexa was released was an abuse of the

patent system.  Appx14404-14406.  The district court denied Freshub's motion *in*

*limine* to prevent Amazon from doing so, resulting in Amazon doing just what

Freshub predicted.  Amazon's repeated, prejudicial references to the irrelevant

filing dates of the Asserted Patents and its Constitutional call to action go hand-in-

hand, and culminated in a closing argument with made up facts and misleading

misstatements of the law.  Amazon asked the jury to find against Freshub on those

bases, rather than on the issues actually before it.

Allowing the jury's verdict to stand in the face of such prejudice to Freshub

was an abuse of discretion, and even amounts to plain error.  Amazon claims that it

was entitled "to allege that Freshub's conduct was an abuse of the U.S. patent

system" because Freshub allegedly never had a working prototype of voice-

processing technology and thus did not "invent[] Alexa."  AMZ Br. at 50.

Amazon's purported justifications are just poor, after-the-fact, and baseless

excuses for its highly misleading and prejudicial arguments to the jury. While Amazon argues repeatedly that Freshub "did not invent Alexa," Amazon does not appeal the jury's finding that Freshub's patents are valid, even though Amazon presented four different theories of invalidity to the jury, and instead, appeals only the district court's finding of no inequitable conduct. Indeed, inequitable conduct and Freshub's alleged bad acts are what this case has always been about for Amazon, not its written description invalidity defense which Amazon uses to try to justify every reference to the filing dates of the Asserted Patents being after Alexa was released.

### A.      Amazon's Closing Was False, Misleading and Prejudicial.

In its closing statement, Amazon's counsel manufactured a scenario found nowhere in the record, namely that Freshub and its patent lawyer sat down with an Echo Alexa device and drafted claims to cover it. Appx1791-1797 (1419:3-1425:13). But there is no evidence in the record that Freshub's patent lawyer sat down with an Alexa device and wrote the patent claims. Amazon admits as much because they attempt to explain away this false story about how the patent lawyer drafted the asserted claims as being presented to the jury as a hypothetical—what Freshub's patent lawyer could have done—not as what actually happened. AMZ Br. at 46. But Amazon's counsel never told the jury in its closing argument that it was merely presenting a hypothetical scenario, and instead presented it as though

26

Freshub's patent lawyer had actually taken each step outlined by Amazon's

counsel in drafting the Asserted Claims to cover Alexa, as demonstrated by the

following excerpts from Amazon's closing statement:

> Now, the only parts [of the claims] that are not clear are
> what happens between receiving the words that the user
> says and identifying an item. That's the part that wasn't
> obvious from just using Alexa and the Echo. ***So there,***
> ***the patent lawyer had to guess. He had to fill in those***
> ***steps himself.*** And he guessed it would work a standard
> way as it was done in the past, that you would take the
> words the user said and try to find a match with a text
> description of a product and identify the product.

Appx1792 (1420:13-22) (emphasis added).

> But they missed. They got this part wrong, because Alexa
> didn't work like those simpler systems from the past.
> Alexa was trying to do much more.

Appx1793 (1421:2-4).

> When it got to the '153 patent, Ikan also got these details
> of the patent wrong. ***Even though they had the Echo and***
> ***Alexa in front of them to copy and write in the claim***,
> they didn't figure out exactly how the Shopping List
> feature works.

Appx1796 (1424:11-15) (emphasis added). There is nothing in those statements to

suggest they are merely hypothetical. Amazon's statements about how Freshub's

patent lawyer drafted the claims of the Asserted Patents find no basis in the

evidentiary record. Thus, Amazon's closing statement "implicate[s] the interest of

substantial justice" requiring a new trial. *In re Isbell Records, Inc.*, 774 F.3d 859,

872 (5th Cir. 2014) ("A closing statement may implicate the interest of substantial justice when counsel's assertions are 'either false or without basis in the record.'") (citations omitted).  Notably, Amazon relies upon the same law in its response. AMZ Br. at 49.

In addition to being flat out false, Amazon's statements regarding the patent lawyer's alleged copying of Alexa to write the patent claims misled the jury as to what was required for Freshub to show infringement.  In stating that Freshub's patent lawyer "got it wrong" when copying the Alexa device to draft the asserted claims, Amazon's counsel improperly misled the jury to believe that Alexa did not infringe because the patent claims do not state exactly the way Alexa works. Appx1791 (1419:3-4) (Amazon's counsel introducing the manufactured story about how the patent lawyer drafted the claims based on describing Alexa as shifting gears to "talk about infringement."); Appx1792-1793 (1420:10-1421:5); Appx1796 (1424:11-23) ("When it got to the '153 patent, Ikan also got these details of the patent wrong.  Even though they had the Echo and Alexa in front of them to copy and write in the claim, they didn't figure out exactly how the Shopping List feature works . . . that's not what Alexa does.").  But that is not a legal defense to infringement.  *See*, *e.g.*, *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990) (district court's finding of infringement not erroneous because "[t]he addition of features does not avoid infringement, if all the

elements of the patent claims have been adopted . . . Nor is infringement avoided if a claimed feature performs not only as shown in the patent, but also performs an additional function.") (citations omitted).  Thus, Amazon's counsel's concocted story regarding how the claims were drafted by copying Alexa was incredibly prejudicial to Freshub, and the jury ultimately sided with Amazon on infringement despite the overwhelming and great weight of evidence proving infringement, as discussed in detail above.  *See supra* § III.

Not only were Amazon's statements regarding Freshub's patent lawyer copying Alexa to draft the patent claims misleading as to infringement, but they were also misleading as to the requirements of the Patent Act and what constitutes an alleged "abuse of the U.S. patent system."  AMZ Br. at 50.  First, a patentee or inventor is not required to first make the claimed inventions to get a valid patent on their inventions or to enforce their patents against others.  *King Instruments Corp. v. Perego*, 65 F.3d 941, 949 (Fed. Cir. 1995) ("Section 284 protects the right to exclude others from exploiting an invention. To invoke that protection, a patentee need not have exercised its natural right to itself make, use, or sell the invention."); *Hartford-Empire Co. v. U.S.*, 323 U.S. 386, 432-33 (1945) ("Congress has repeatedly been asked, and has refused, to change the statutory policy by imposing a forfeiture or by a provision for compulsory licensing if the patent is not used within a specified time . . . . No court can disregard any statutory provisions in

29

respect to these matters on the ground that in its judgment they were unwise or prejudicial to the interests of the public.") (citations omitted).  Amazon misleadingly suggested otherwise and admits that their purpose in doing so was to allege that Freshub was somehow a bad actor and not worthy of patent rights, which is simply not the law.  AMZ Br. at 50 ("Given that Freshub (and its predecessor Ikan) never had working voice-shopping technology yet still claimed to have invented Alexa, Amazon was within its rights to allege that Freshub's conduct was an abuse of the U.S. Patent system.").

Under Amazon's twisted justification, the presentation of any invalidity defense could now be used to accuse the patent holder of having nefarious motives constituting an abuse of the patent system.  That is not and cannot be the law.  Invalidity does not require any showing of some improper intent.  To the extent it goes to a different defense of inequitable conduct, that was reserved for a bench trial, which is a common practice, and should not have been before the jury due to its prejudicial effect on the jury.  *See, e.g., eTool Dev., Inc. v. Nat'l Semiconductor Corp.,* No. 2:08-cv-196-WCB, 2011 WL 12677158, at *1 (E.D. Tex. Dec. 12, 2011) (bifurcating inequitable conduct trial, holding that "presentation of evidence bearing on non-jury issues . . . could result in confusion . . . or . . . risk of prejudicing the jury's consideration of issues properly before it").  And Amazon did not plead any other equitable unenforceability defenses.  Even if it had,

"equitable defenses [are] decided by the Court, not the jury." *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-01001-JRG-RSP, 2016 WL 8201783, at *4 (E.D. Tex. Nov. 2, 2016)). That Amazon felt entitled to accuse Freshub of ill intent because Amazon did not think Freshub's patents adequately described "Alexa" does not justify the misleading and prejudicial statements throughout trial, designed to distract the jury from the issues properly before it, such as infringement and written description.

With respect to written description, Amazon's allegations as to the filing date of the applications for the Asserted Patents and statements in closing regarding the patent lawyer copying Alexa misled the jury in two ways. OB at 48-49. First, in asserting that the patent lawyer copied Alexa, Amazon improperly suggested to the jury that the specification and the claims had to describe everything that Alexa does, not just what Freshub invented. Second, in repeatedly referencing that the patent applications for the Asserted Patents were filed after Alexa was launched, Amazon insinuated that allowing patentees to claim an existing system in patent claims that are entitled to an earlier priority date was an abuse of the patent system, thus requiring nullification. Neither is supported by the law.

Whether patent claims meet the written description requirement is based on what the original patent specification said as of the date to which the patent claims

priority—not the date on which continuation applications were filed.  *Ariad*

*Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

And the law allows patent applicants to file continuation applications to cover later

released products.  "[T]here is ***nothing improper, illegal or inequitable*** in filing a

patent application for the purpose of obtaining a right to exclude a known

competitor's product from the market; nor is it in any manner improper to amend

or insert claims intended to cover a competitor's product the applicant's attorney

has learned about during the prosecution of a patent application . . . its genesis in

the marketplace ***is simply irrelevant***."  *Kingsdown Med. Consultants, Ltd. v.*

*Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) (emphasis added) (citation

omitted).

The cases Amazon cites to allege that the dates of the filing of the patents

and the release of Alexa, respectively, were somehow relevant to its written

description defense do not apply because in those cases there was evidence that the

patent lawyer or inventor was aware of and tried to copy features of the accused

products in later-filed claims.  AMZ Br. at 44 (citing *Gentry Gallery, Inc. v.*

*Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) ("[A]lthough not dispositive,

because one can add claims to a pending application directed to adequately

described subject matter, [inventor] admitted at trial that he did not consider

placing the controls outside the console until he became aware that some of

Gentry's competitors were so locating the recliner controls," which "the original disclosure clearly identifies the console as the only possible location for the controls."); *PIN/NIP, Inc. v. Platte Chem. Co*., 304 F.3d 1235, 1247-48 (Fed. Cir. 2002) (specification devoid of any mention or even implication of claimed feature added to cover competing product)).  That is not the case here, as Amazon admits in describing the story about Freshub's patent lawyer copying Alexa as "hypothetical."  AMZ Br. at 46.

Further, if the specification here was truly devoid of any mention of voice-processing technology such that it fails the written description requirement, as Amazon so adamantly claims in their Response brief to justify its repeated references to the filing dates of the patents (*id*. at 24, 44-45, 52-53), surely Amazon would have sought reversal of the jury's determination finding the opposite to be true.

Finally, Amazon did not need to tell the jury that the applications for the Asserted Patents were filed after Alexa launched in order to rebut willfulness, as Defendants suggest, because that is neither legally correct or a reasonable claim. *Id*. at 47.  Amazon could have accomplished the same thing with reference to when the Asserted Patents ***issued***—an otherwise relevant and non-prejudicial fact—in order to avoid introducing unduly prejudicial facts.  *Boundaries Sols. Inc. v. CoreLogic, Inc.*, No. 5:14-cv-00761-PSG, 2014 WL 4954017, at *4 (N.D. Cal.

33

Sept. 29, 2014) ("knowledge of a patent application does not equal knowledge of issued patents," which is required to allege willfulness) (citation omitted).

### B.    Amazon Made Prejudicial Calls to the Jury to Protect the U.S. Constitution and U.S. Companies.

Amazon's pleas to the jury to protect it and other U.S. companies from Freshub's alleged abuse of the patent system was designed to improperly "evoke a sense of community loyalty, duty and expectation" in the jurors to stop Freshub from lawfully enforcing its patents, because they were the only ones that could. *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238-39 (5th Cir. 1985) (finding prejudicial arguments in closing that "invo[ked] the conscience of the community . . . so exceeded the limits of advocacy as to cause a prejudicial verdict" such that "the district court abused its discretion by not granting a new trial"); Appx1808 (1436:23-25).  Amazon's tactics resulted in a verdict based on exactly what the Federal Rules of Evidence are designed to prevent—judgments based on emotion and passion, rather than the facts and claims at issue. *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) ("Rule 403 in the Notes defines 'unfair prejudice' as 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"); *see also Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276-78 (5th Cir. 1998) (verdicts "influenced by passion and prejudice are the antithesis of a fair trial," thus requiring grant of new trial).

34

Amazon told the jury that they must find in Amazon's favor in order to preserve the integrity of the U.S. Constitutional patent system and that this case was about more than just the claims in front of them: "It has bigger ramifications. It has broad ramifications for our U.S. patent system." Appx1804 (1432:23-24). Amazon emphasized that the jurors were tasked with the very "preservation of this constitutional patent system," suggesting that without a decision in their favor, the integrity of the U.S. Constitutional patent system would be undermined or even destroyed. Appx1808 (1436:12-18). Nothing justified Amazon's closing statement that suggested to the jurors that the implications of their decision in this case would have significant consequences not just to the parties in this case, but to "Google, Apple," and "[e]very U.S. technology company they can find" and to the U.S. Constitution itself. Appx1808 (1436:19-25). Amazon then improperly tasked the jury with stopping the manufactured implications from playing out by finding against Freshub.

As this Court has recognized, unfamiliarity of decision-makers such as juries with the complex procedures of patent examination allows an accused infringer to easily portray a "relatively routine act of patent prosecution," such as filing continuation applications after a later-accused product is released, "as intended to mislead or deceive" if the district court fails in its role as gatekeeper. *Magnivision*, 115 F.3d at 961 (defendant's emphasis of irrelevant allegations of patent

prosecution irregularities with "assertions and innuendos of impropriety [that] were magnified by repetition" demonstrated unfair prejudice requiring a new trial) (citations omitted).  Because Amazon's conduct falls squarely within the type of conduct which has resulted in granting a new trial, Freshub asks this Court to grant a new trial here.  *Irvan v. Frozen Food Express, Inc.*, 780 F.2d 1228, 1231 (5th Cir. 1986) (verdict demonstrated that improper comments asking "jurors . . . to judge this case . . . on the basis of their disapproval of . . . legal right" to bring suit substantially influenced the jury's verdict, and thus were not harmless).

### C.    Freshub Objected to Amazon's Improper Arguments.

Freshub objected before and during trial to Amazon's repeated references to the irrelevant abandonment of the parent application to the Asserted Patents and subsequent filing of the applications for the Asserted Patents.  Appx14402-14407 (Freshub's motion *in limine* to preclude inequitable conduct defense before jury and mention of filing dates of Asserted Patents)); *see also, e.g.*, Appx322-330 (10:15-18:24) (Freshub's objections to "abandonment" in opening demonstratives; objection to use of repeated "Rejected" symbols sustained but reference to abandonment permitted).

Further, although Freshub objected at trial, a new trial would still be appropriate even if Freshub had not done so diligently, given the pervasive nature of Amazon's prejudicial misconduct and, in particular, the false and extremely

36

misleading nature of Amazon's closing statement. *In re Isbell Records*, 774 F.3d

at 872 ("A closing statement may implicate the interest of substantial justice when

counsel's assertions are 'either false or without basis in the record.'") (citations

omitted). Indeed, "in cases where the misconduct at issue is substantial or

repeated . . . a new trial is warranted even if opposing counsel does not object to

every single violation." *Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883

(GEB), 2011 U.S. Dist. LEXIS 86632, at *13 (D.N.J. Aug. 5, 2011) (granting new

trial, acknowledging that "where misconduct is constant and repeated, counsel

cannot object to every transgression . . . .") (citations omitted).

Further, Amazon's cited cases do not support denial of a new trial. AMZ Br.

at 42. In *Baisden v. I'm Ready Prods., Inc.*, the Fifth Circuit affirmed no new trial

based on factors in addition to lack of objections, including that there was no

"show[ing] how these statements would have affected the outcome at trial.

Moreover, none of the statements rise to the level of severity that would require a

new trial to avoid a miscarriage of justice." 693 F.3d 491, 509 n.17 (5th Cir. 2012)

(citation omitted). Neither is true here. As explained above, without Amazon's

false and/or misleading and prejudicial statements regarding the filing dates of the

Asserted Patents and the allegedly resulting need for the jury to defend the U.S.

Constitution, the jury would not have been swayed to find for Amazon on

infringement given the overwhelming evidence of infringement, which included

37

Amazon's key engineers admitting infringement.  Further, Amazon's reliance on *Reese v. Mercury Marine Div. of Brunswick Corp.* does not apply, because the party defendant itself made irrelevant and prejudicial arguments that did not amount to prejudice, unlike this case.  793 F.2d 1416, 1429 n.11 (5th Cir. 1986).  And in *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989), there were no comments calling for the jury to protect the U.S. Constitution and U.S. companies, as is the case here.

In sum, Amazon's false, misleading and prejudicial statements throughout trial, and during their closing statement, were so pervasive and severe as to warrant a new trial in order to correct the prejudicial verdict.  *Westbrook*, 754 F.2d at 1238; *see also Hall v. Freese*, 735 F.2d 956, 961-62 (5th Cir. 1984) (abuse of discretion to deny new trial where defendant made remarks "to prejudice the jurors" and "argu[ed] outside the record" which does not "serve any remote purpose for which a trial is intended.").

## **RESPONSE ON CROSS-APPEAL**

## IV.  THERE IS NO CLEAR ERROR IN THE DISTRICT COURT'S DETERMINATION THAT AMAZON FAILED TO PROVE INEQUITABLE CONDUCT BY CLEAR AND CONVINCING EVIDENCE.

Amazon concedes that Freshub's Asserted Patents are valid and does not appeal the jury determination confirming validity.  Appx1, Appx9.  Instead, Amazon's sole argument on cross-appeal seeks to relitigate the district court's

finding of no inequitable conduct. *See* AMZ Br. at 53-65. Amazon's cross-appeal fails for two key reasons: Amazon has not demonstrated clear error in the district court's findings, and Amazon relies on theories that were not before the fact finder in making its finding of no inequitable conduct to try to manufacture clear error.

First, Amazon has not and cannot demonstrate any clear error in the district court's decision that Amazon did not present clear and convincing evidence of inequitable conduct to the fact finder at the bench trial.[3] *See* Appx25-38 (order of no inequitable conduct). The district court correctly determined that Amazon failed to meet its heavy burden of proving its alleged inequitable conduct defense because Amazon did not proffer "clear and convincing evidence" that "the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1287 (citation omitted).

Importantly, the district court found that Amazon failed to prove two required elements: (1) there was no misrepresentation to the Patent Office (Appx33-34), and (2) the "single most reasonable inference" from the facts was not an intent to deceive the Patent Office (Appx34-36). *See Therasense*, 649 F.3d at 1290 (quotation omitted). To disturb the district court's ruling, Amazon must

---

[3] Amazon concedes it bears a heavy burden to demonstrate inequitable conduct. AMZ Br. at 53. Thus, its claim that Freshub did not present affirmative evidence of proper conduct, including testimony from named inventor Mr. Douer or its expert on Patent Office procedures (AMZ Br. at 54-55) is a red herring—there is no such requirement.

show clear error in both determinations because both are required to find

inequitable conduct.  As explained below, Amazon has not shown clear error as to

either.

Second, after the denial of its inequitable conduct claim, Amazon

improperly injected new theories and even additional deposition testimony into its

post-trial briefing before the district court.  *See* Appx17534-17539 (Freshub's

Opposition to Amazon's Motion to Amend Findings under Fed. R. Civ. P. 52(b),

detailing Amazon's improper new theories and evidence).  Amazon appended nine

pages of deposition testimony from Ikan's prosecution counsel, David Weiss, to its

post-trial Motion to Amend Findings under Fed. R. Civ. P. 52(b), of which only a

handful of sentences had been actually submitted as evidence during the bench

trial.  *Compare* Appx16986-17011 (Mr. Weiss' testimony and errata submitted at

bench trial) *with* Appx17384-17396 (additional testimony submitted as exhibit to

Motion to Amend Findings, together with a completely new deposition video).

Then, in that Motion, Amazon asked the district court to make previously

unrequested findings about: (i) Knobbe Martens LLP's and Mr. Weiss' general

practices; (ii) Mr. Weiss' legal knowledge and experience; (iii) what Mr. Weiss

knew or did at various times; and (iv) Mr. Weiss' understanding of the format of

the Knobbe docketing system.  Appx17534.  It also requested a new finding about

Mr. Weiss' recollections about Knobbe's docketing system, based on testimony that Amazon did not submit during the bench trial at all. Appx17536.

Amazon waived its right to assert these arguments which they did not pursue at trial and to rely upon evidence that was available but that Amazon chose not to submit at the bench trial. *See Fontenot*, 791 F.2d at 1219-20 (refusing to overturn judgment based on evidence raised post-trial that was available but not presented at trial and "new theories" about the evidence shown at trial). Amazon cannot use belatedly-submitted findings based on waived arguments and evidence it did not present to allege error in the district court's decision. AMZ Br. at 63 (relying on alleged "facts" from Amazon's Motion to Amend Findings, including waived material). This Court should ignore this inappropriately-raised testimony and Amazon's arguments based upon it due to Amazon's waiver.

### A.   The Finding that Ikan Made No Material Misrepresentations to Revive the '291 Application Is Not Clearly Erroneous.

The district court properly found that Amazon failed to muster clear and convincing evidence, whether direct or indirect, of any misrepresentation to the PTO. Appx33-34. Amazon now simply contends that the district court erred by not reaching Amazon's desired conclusion. AMZ Br. at 57. Such is not a clear error. *Anderson*, 470 U.S. at 573-74 (appellate court may not supplant a district court's findings with its own simply if "it would have weighed the evidence differently").

41

Amazon accused Mr. David Weiss—a 25-year patent prosecutor who is a current partner at Knobbe Martens and has served as the managing partner of Knobbe's Los Angeles office (Appx16988 at 8:21-9:11)—of lying in a petition to revive so as to revive an abandoned application, and Amazon did so without any evidence. The extent of Amazon's bench trial submission in support of this alleged inequitable conduct consisted of a handful of documents from the '291 Application file history, a privilege log,[4] and some excerpts of deposition testimony.[5] Appx26-27 (district court listing the extent of Amazon's submission). The district court addressed each of these in turn and found that none supported finding a misrepresentation—in other words, Ikan accurately affirmed to the PTO that it had inadvertently abandoned the '291 Application.[6] Appx34.

---

[4] With respect to privilege (AMZ Br. at 54), Ikan's prosecution counsel at Knobbe Martens LLP claimed privilege on behalf of its clients Ikan Technologies and Ikan Holdings over documents that were indisputably subject to such privilege, namely attorney-client communications. Knobbe properly provided a privilege log, which Amazon tried to use to support its claim. Amazon cannot even identify what "records" were allegedly "avoid[ed]" using privilege claims because there were none. *Id*.

[5] As explained *supra*, Section III, Amazon's entire theory of the case revolved around its attempt to paint Freshub and Ikan as purported bad actors.

[6] Amazon's list of case citations about intent (AMZ Br. at 55-56) are not relevant. The Manual of Patent Examining Procedure ("MPEP"), which governs patent prosecution, defines an intentional abandonment as one "[w]here [the] applicant deliberately permits an application to become abandoned . . . [That is a] deliberately chosen course of action, and . . . cannot be considered as "unintentional"). MPEP § 711.03(c) (citing *In re Application of G*, 11 U.S.P.Q.2d

Amazon alleged the district court committed error by not finding that Ikan intentionally abandoned the '291 Application because Mr. Weiss had listed the application in a mass assignment of patent assets signed by inventor and Ikan principal Sony Douer, where it was buried in an ambiguously-titled category titled "Inactive/Abandoned/Expired Applications." *See* AMZ Br. at 57. Amazon contended that the inclusion of the application in the assignment meant that the statement of unintentional abandonment in the petition to revive was an alleged misrepresentation. *Id.* However, the district court provided multiple reasons for its specific finding that the assignment of the '291 Application was insufficient to rise to the level of ***clear and convincing*** evidence of an intentional abandonment, in particular due to the absence of any other purported evidence of a deliberate abandonment. *Compare* AMZ Br. at 57 *with* Appx34.

The district court acknowledged that the assignment was unhelpful as "evidence" because it did not demonstrate clearly and convincingly that "Mr. Douer had personal knowledge about the status of the '291 application," which was "especially true given that the '291 application was listed among dozens of

---

1378, 1380 (Comm'r Pat. 1989)). It offers examples of deliberate abandonment, such as choosing to stop prosecuting an application because the applicant concluded the claims are unpatentable or insufficiently valuable. *Id.* To the extent that Amazon suggests that tort law justifies considering anything less than a "deliberately chosen course of action" to be intentional, that suggestion directly conflicts with the MPEP. Notably, Amazon had no evidence of a deliberately chosen course of action to abandon the '291 Application, because there is none.

other patents and applications and Mr. Douer was not included in the 2012 communications between Mr. Weiss and Ikan personnel after the PTO's notice of abandonment." Appx36. The district court found a fatal "lack of evidence" in the face of "Amazon's high burden of proof," such that Amazon's submission "d[id] not amount to clear and convincing evidence that Ikan made a deliberate decision to abandon the '291 application." Appx34.

Amazon alleges the district court committed two other errors in finding that Ikan did not make a misrepresentation to the PTO when it affirmed its '291 Application was inadvertently abandoned. Amazon bases the first alleged error on the unremarkable fact that Mr. Weiss generally forwarded Patent Office communications to his clients. AMZ Br. at 57-58. The district court directly acknowledged those facts, but still found that there was no evidence of a misrepresentation. Appx29. As the court noted, a Knobbe privilege log for communications between Knobbe and Ikan demonstrated that Mr. Douer was not actually included on communications post-dating the Patent Office's Notice of Abandonment, such that there was no evidence of a deliberate decision to abandon the application that would have made the later petition to revive false. Appx34 (explaining log does not evidence a misrepresentation); Appx36 (explaining how log actually disproves against Amazon's false allegations). Thus, the general practice of forwarding documents received from the PTO says nothing about what

44

occurred with respect to Ikan's application.  Moreover, the district court explained that Amazon's mere citation to documents from the file history (*e.g.*, a final rejection, a notice of abandonment, a petition to revive, and the decision granting that petition) did not suggest any kind of misrepresentation.  Appx33-34.

Amazon's second allegation of error is based on the equally unremarkable assertion that Mr. Weiss generally recorded if a client expressly instructed him to abandon an application, which the district court also directly acknowledged.  AMZ Br. at 58 (citing Appx33-36).  This testimony was only about a generic practice and did not offer clear and convincing evidence that Ikan deliberately abandoned its application.  More importantly, Amazon had no evidence that Mr. Weiss actually received an instruction to abandon in this case, because he did not.  Contrary to Amazon's suggestion (AMZ Br. at 57-58), the district court addressed that the assignment did not constitute a confirmation of abandonment (Appx36) and that there was no evidence Mr. Douer received the notice of abandonment based on the Knobbe privilege log (Appx34, Appx36).  Thus, there was no deliberate decision to abandon the application.

### B.    The Finding that an Intent to Deceive Was Not the Single Most Reasonable Inference from the Facts Is Not Clearly Erroneous.

Since there was no material misrepresentation, the Court need not consider intent to deceive.  *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375-76 (Fed. Cir. 2008) (reversing inequitable conduct based on erroneous

finding that an affirmation to the PTO was somehow misleading, when there was an "equally reasonable inference" that prosecutor complied with PTO regulations in good faith). Nonetheless, there is also no evidence of any intent to deceive. Amazon fell well short of the high bar to prove by clear and convincing evidence that "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290 (quotation omitted). Amazon also cannot somehow shore up its inadequate showing of intent using its purported evidence of a material misrepresentation. *Id.* ("Intent and materiality are separate requirements.").

After considering all of Amazon's evidence submitted for the bench trial, the district court found that Amazon did not provide "any direct evidence" showing a specific intent to deceive the Patent Office, nor was its "indirect evidence" at all convincing. Appx35-36. In its cross-appeal, Amazon fails to point to any clear error; it simply contends that "all evidence of record points to an intent to deceive. [Therefore,] [t]he district court's contrary finding was clearly erroneous." AMZ Br. at 58-59. By definition, the district court's reasonable interpretation of the evidence is not clear error. *Inwood*, 456 U.S. at 856 n.16 (reasonable inference is not clear error even if evidence potentially supports other inferences).

***Amazon's claim that Ikan's alleged "knowledge of the consequences" demonstrates intent to deceive does not show clear error.*** Amazon first argues

that Mr. Weiss intended to deceive the PTO because he allegedly "fail[ed] to conduct a thorough investigation of Ikan's abandonment."[7]  AMZ Br. at 59.  But Amazon identifies no clear error here.  First, Amazon repeatedly mischaracterizes a mass assignment of patent assets as having "confirmed the abandonment," but as explained above, the district court properly found that document did not evidence a deliberate decision to abandon the '291 Application.  AMZ Br. at 17, 55 n.19, 57, 59; Appx36.  Nor does the bare fact of how long the application was abandoned say anything about Ikan's intent, contrary to Amazon's suggestion.  AMZ Br. at 59.

Second, Amazon cannot shift its burden of proof to Freshub by claiming that Freshub needed a witness to testify as to the inadvertence of the abandonment and the absence of an intent to deceive.  *See* AMZ Br. at 59-60.  Amazon bears the burden to show inequitable conduct by clear and convincing evidence, which the district court properly found it had failed to do.  *Therasense*, 649 F.3d at 1287.  At any rate, Mr. Weiss affirmed in his truthful sworn statement to the Patent Office that he had determined the abandonment was unintentional and that the application should be revived.  As the district court reflected, the file history shows only the

---

[7] Amazon's second argument about intent to deceive appears to be based on the same premise about failure to investigate, with slightly different wording.  *See* AMZ Br. at 60 (second argument is titled "Ikan's failure to investigate also demonstrates its intent . . .").  Nonetheless, Freshub addresses each argument individually.

actions that Mr. Weiss took and is devoid of any evidence of inequitable conduct. Appx34. Thus, not only did Amazon fail to carry its burden, but Amazon's own evidence actually reinforces that there was no inequitable conduct.

Third, Amazon claims that the facts that Mr. Weiss knew the application was abandoned when he revived it, that he would need to submit a petition to revive in order to obtain revival, and that the patent had been the subject of a mass assignment of patent assets while abandoned, somehow add up to an intent to deceive. AMZ Br. at 59. The first two facts would ostensibly be true for every petition to revive ever submitted. The third, as explained above, does not evidence intent to deceive. Amazon tries to paint these facts with a suspicious gloss to manufacture its inequitable conduct claim, but there simply is no "deceit" by Mr. Weiss, regardless of whether any of his actions are "chargeable" to Ikan. AMZ Br. at 60.

***Amazon's claim that Mr. Weiss' alleged failure to investigate demonstrates an intent to deceive does not show clear error.*** Mr. Weiss, a patent prosecutor of 25 years, understood his duty to make an inquiry into the facts before filing for renewal, his duty of candor, and the definition of intentionality under the MPEP, as his sworn testimony demonstrated and as Freshub's expert explained. Appx17001-17002 at 127:14-127:20, 128:13-16 (Mr. Weiss understood duty to investigate); Appx17002 at 189:13-190:1 (Mr. Weiss understood duty of candor); *see also*

MPEP § 711.03(c) ("[w]here applicant deliberately permits an application to become abandoned . . . [that is a] deliberately chosen course of action, and . . . cannot be considered as "unintentional""); *see also* Appx6494-6495 at ¶ 97 (sworn Expert Report of Stoll submitted in support of Freshub's Motion for Summary Judgment of No Inequitable Conduct) (unrebutted expert opinion that Mr. Weiss' testimony showed his understanding of the definition of an intentional abandonment was consistent with MPEP § 711.03(c)). The district court considered these facts and correctly found no intent to deceive. Appx31 at ¶ 24; Appx36 (analysis). There simply was no failure to investigate, as Amazon contends.

At Mr. Weiss' deposition in January 2021—over four years after the events at issue—he could not recall one way or the other if he had checked with his docketing department regarding the status of the abandonment, which Amazon admits. AMZ Br. at 61. That Mr. Weiss did not have a specific memory of whether he checked with his docketing department some five years before in 2016 regarding the '291 Application is not evidence that he failed to do an investigation. Moreover, counsel asked him "when you tell the docketing department that the application has been—that the client has agreed to let the application go abandoned, how is that noted in the docketing system? What artifact is created?" to which Mr. Weiss replied, "I don't know. I've never gone back to look."

Appx16990 at 39:20-40:1. This vague and generic question is hardly the "crucial" evidence that Amazon claims. AMZ Br. at 61. There is no "evidence" of a failure to investigate Ikan's inadvertent abandonment in Mr. Weiss' statement that he had not looked at what "artifact" the docketing department creates in Knobbe's internal system when an attorney asks the department to note a client instruction.

Nor does this testimony somehow indicate an inconsistency in Mr. Weiss' explanation, such that Amazon's cited cases regarding inconsistent testimony from other circuits are inapplicable. *See* AMZ Br. at 61-63. Further, the only two Federal Circuit cases that Amazon cites are factually distinguishable. *See id.* The first case related to a court's "implausible" interpretation of the evidence in which a court based its decision on one finding without "any evidence of record," a finding that contradicted an ***undisputed*** fact, as well as a finding crediting later testimony that an inventor had a "minimal role" in the invention, despite prior testimony from another lawsuit that he was a "principal inventor." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1580-81 (Fed. Cir. 1993). The second case is an unpublished case reviewing an agency decision from the Department of Veteran Affairs under a different standard from the one that applies in this case. *Satornino v. Dep't of Veterans Affs.*, Case No. 94-3471, 1994 WL 567013, at *1 (Fed. Cir. 1994). In that case, the Federal Circuit affirmed the agency's choice to discredit self-serving testimony in favor of crediting testimony

50

from "other, more credible witnesses." *Id.* These egregious contradictions are not present here. In fact, here, it is Amazon that has offered implausible negative views of an experienced attorney's sworn statements and no evidence of record that there was any deliberate decision to abandon Ikan's patent application.

Particularly egregious facts readily distinguish Amazon's attempt to relate this case to *3D Med.* (AMZ Br. at 63), in which the owner and sole employee of a company knew he had acquired a patent that had expired due to nonpayment of fees, and knew that the original patentee had gone bankrupt only two months after the nonpayment. *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1334-35 (N.D. Ga. 2017). He submitted a pre-populated form petition for revival from the PTO website on his own, which contained an affirmation that he was certifying the delay was unintentional. *Id.* at 1335. He admitted he had done nothing to confirm if that was true. *Id.* The court observed it was a case of willful blindness, particularly as had he looked, he would have found explicit correspondence from the original patentee to its attorney instructing him "to let [the '655 patent] go." *Id.* at 1338 (modification in original). There are no such instructions here, and no willful blindness, as Mr. Weiss investigated before making his affirmation and had worked with the portfolio before. *See, e.g.*, Appx16997-17002 (109:23-110:6, 110:14-111:2, 115:6-21, 118:16-119:16, 121:3-7, 121:9, 127:14-20, 128:13-16, 189:13-190:1).

Based on the evidence, Mr. Weiss determined that the abandonment was unintentional after conducting an investigation. Nothing suggests that Mr. Weiss "failed" to do an investigation. Thus, Amazon has no evidence indicating an intent to deceive the PTO. Moreover, the district court's analysis deserves a deferential review because it listened to and weighed the credibility of the testimony of Ikan's prosecution counsel, David Weiss, for himself. *Anderson*, 470 U.S. at 575 (even "greater deference" should be afforded a district court's credibility determinations). Thus, Amazon's cross-appeal must fail.

### C.    Amazon Cannot Support Its Collapsed Inequitable Conduct Claim with Findings It Did Not Request or Testimony It Did Not Present at Trial.

Amazon improperly presents new theories and evidence to this Court that it did not present to the district court until ***after*** losing on inequitable conduct at the bench trial. AMZ Br. at 17 (citing Appx17378, a page from Amazon's Motion to Amend Findings under Fed. R. Civ. P. 52(b) filed after the bench judgment, which raised various new findings that Amazon had not previously requested); *id*. at 63 (citing Appx17379-17380, seeking previously unrequested findings labelled 13 and 14). In this appeal, Amazon uses some of these belated theories to argue Mr. Weiss contradicted himself in his testimony. AMZ Br. at 61-63. Specifically, it claims that the district court wrongly credited Mr. Weiss' testimony that he checked the docketing system when investigating the abandonment of the '291

Application, because Amazon alleges that at another point in Mr. Weiss'

deposition he testified he was unsure. *Id.* To make this point in its post-trial

briefing, Amazon submitted a whole new excerpt of deposition testimony,

purportedly as "context," to presumably cause the district court to reconsider its

reading of the testimony snippets that Amazon had submitted for trial. *See*

Appx17384-17396. But Amazon cannot now rely on the findings it requested for

the first time in its post-trial briefing to show alleged errors in the district court's

judgment, because they are waived. *See Fontenot*, 791 F.2d at 1219.

The district court properly found that Mr. Weiss "look[ed] at his firm's

docketing system" to investigate the abandonment of the '291 Application.

Appx30 (citing Appx17002 at 128:13-16, 135:19-23, 136:6-8, 137:17-19, 138:22-

23). It cited the following testimony from Mr. Weiss about the docketing system:

> Q. Did you check for a notification in the docket system if the
> abandonment was authorized? It's a yes-or-no question. Did
> you do it?
>
> A. Yeah, I don't recall if I checked the docket.
>
> […]
>
> Q. Did you—as part of your investigation, you told the patent
> office that the entire period was unintentional. Did you
> check to see if there was notation in the docketing system
> that the abandonment was intentional? Did you check the
> docketing system, Mr. Weiss?
>
> A. Yes.

Appx17002 at 137:17-19, 138:22-23, 135:19-23, 136:6-8; *see also* Appx30 (also citing Mr. Weiss' understanding that a "reasonable investigation" is required before revival (Appx17002 at 128:13-16; Appx17007 at 198:22-24)). The district court fully considered Mr. Weiss' testimony on this subject. He inferred that Mr. Weiss checked the docketing system. Appx30. That the Court did not infer Amazon's preferred unsupported interpretation that Mr. Weiss did ***not*** check the docketing system is not an "error," as Amazon alleges. AMZ Br. at 61-63. Thus, Amazon cannot meet its burden of demonstrating that the district court's finding was clearly erroneous, because the court's finding is, in fact, directly supported by the record. *See Inwood*, 456 U.S. at 856, n.16.

Moreover, Amazon's statement that the district court ignored allegedly "contrary testimony" that Amazon raised in its "proposed findings" (AMZ Br. at 62-63) is misleading. In actuality, Amazon complains that the district court ignored Amazon's ***waived*** requested finding, which Amazon only raised within its post-trial Motion to Amend Findings based on testimony it submitted for the first time with that post-trial Motion. *See* Appx17380 (proposing new finding based on testimony appended to that Motion that was not presented at trial). Thus, apart from the fact that the district court considered all Mr. Weiss' testimony and credited it appropriately, Amazon's attempt to manufacture an error is based on evidence that it waived, and must fail.

54

Finally, the additional pages of testimony that Amazon tried to introduce in its post-trial briefing (Appx17384-17396) simply reinforced Mr. Weiss's investigation, and thus they do not demonstrate any clear error in the Court's finding of no inequitable conduct. For example, Mr. Weiss unequivocally responded "yes" when asked to confirm if he had considered "the fact that Sony Douer signed a document, notarized signature, that listed the patent as abandoned in December 2012." Appx17385 at 132:2-6, 132:11-17. This further supports his testimony for the bench trial that he conducted an investigation. *See* Appx16997-17002 at 109:23-110:6, 110:14-111:2, 115:6-21, 118:16-119:16, 121:3-7, 121:9, 127:14-20, 128:13-16, 189:13-190:1 (Mr. Weiss' testimony explaining that he is an experienced practitioner aware of the specific MPEP rules governing unintentional abandonment, he strives to comply with PTO regulations and his duty of candor, and he investigated the abandonment and satisfied himself that the '291 Application was indeed unintentionally abandoned before filing the petition); *see also* Appx17079-17080 (Petition to Revive). It also further supports the Court's conclusion that Amazon lacked clear and convincing evidence of any intent to deceive the Patent Office because, at best, Amazon merely alleged negligence. *See* Appx36. Thus, Amazon's new evidence does not justify disturbing the district court's finding of no intent to deceive and no inequitable conduct.

## <u>CONCLUSION</u>

For at least the foregoing reasons, Freshub respectfully requests that this Court reverse the jury's finding of non-infringement as to the '153 Patent, or alternatively, remand for a partial new trial on infringement of the Asserted Patents and damages.  Additionally, because Amazon failed to identify any clear error in the district court's finding of no inequitable conduct, the Court should sustain the district court's findings of fact and conclusions of law.

Respectfully submitted,

Dated: January 9, 2023          By:  */s/ Paul J. Andre*

Paul J. Andre
Lisa Kobialka
James Hannah
Kramer Levin Naftalis
 & Frankel LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiffs-Appellants*,
FRESHUB, INC. and FRESHUB, LTD.

## **CERTIFICATE OF COMPLIANCE WITH FED. CIR. R. 28.1(b)**

1.      The foregoing filing complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(1) because this brief contains 12,633 words exclusive of the parts of the filing as exempted by Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.


Dated: January 9, 2023                          */s/ Paul J. Andre*
                                                 Paul J. Andre