**Nos. 2022-1391, -1425**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

⎯⎯⎯⎯ ◆ ⎯⎯⎯⎯

FRESHUB, INC., FRESHUB, LTD.,
*Plaintiffs-Appellants*

v.

AMAZON.COM, INC., PRIME NOW, LLC,
WHOLE FOODS MARKET SERVICES, INC., AMAZON.COM SERVICES LLC,
*Defendants-Cross-Appellants*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

*On Appeal from the United States District Court for the Western District of Texas,
in No. 6:21-cv-00511-ADA · Honorable Judge Alan D. Albright.*

## REPLY BRIEF OF DEFENDANTS-CROSS APPELLANTS AMAZON.COM, INC., AMAZON.COM SERVICES LLC, WHOLE FOODS MARKET SERVICES, INC., AND PRIME NOW, LLC

J. DAVID HADDEN
SAINA S. SHAMILOV
RAVI RANGANATH
FENWICK & WEST, LLP
801 California Street
Mountain View, California 94041
Tel: (650) 988-8500

TODD R. GREGORIAN
ERIC B. YOUNG
FENWICK & WEST, LLP
555 California Street, 12th Floor
San Francisco, California 94104
Tel: (415) 875-2300

*Counsel for Defendants/Cross-Appellants*

February 21, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-1391, -1425 |
| **Short Case Caption** | Freshub, Inc. v. Amazon.com, Inc., et al. |
| **Filing Party/Entity** | Amazon.com, Inc.; Amazon.com Services LLC; Prime Now LLC; Whole Foods Market Services, Inc. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>February 21, 2023</u>

Signature:  <u>/s/ J. David Hadden</u>

Name:  <u>J. David Hadden</u>

i

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Amazon.com, Inc. | | None |
| Amazon.com Services LLC | | Amazon.com, Inc. |
| Prime Now, LLC | | Amazon.com, Inc. |
| Whole Foods Market Services, Inc. | | Amazon.com, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☑  Additional pages attached

| | | |
|---|---|---|
| See additional page attached. | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Additional Attachment to Form 9. Certificate of Interest**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in the court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47(a)(4).

Vigen Salmastlian, Allen Wang, Fenwick & West LLP;

Deron R. Dacus, The Dacus Firm, P.C.; and

Barry K. Shelton and Bradley D. Coburn, Winston & Strawn LLP.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST-------------------------------------------------------------- i

TABLE OF CONTENTS----------------------------------------------------------------- v

TABLE OF AUTHORITIES ---------------------------------------------------------vi

TABLE OF ABBREVIATIONS ---------------------------------------------------- viii

INTRODUCTION------------------------------------------------------------------ 1

ARGUMENT ----------------------------------------------------------------------- 3

    I.    IKAN'S STATEMENT OF UNINTENTIONAL
        ABANDONMENT WAS FALSE. --------------------------------------- 3

    II.   THE SINGLE MOST REASONABLE INFERENCE TO
        DRAW FROM THE RECORD IS THAT IKAN
        INTENDED TO DECEIVE THE PATENT OFFICE. ------------------ 8

    III.  AMAZON DID NOT PRESENT NEW THEORIES AND
        REVERSAL IS WARRANTED BY THE BENCH TRIAL
        RECORD ALONE. --------------------------------------------------- 13

CONCLUSION-------------------------------------------------------------------- 17

CERTIFICATE OF COMPLIANCE-------------------------------------------------- 18

CERTIFICATE OF SERVICE ------------------------------------------------------ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3D Medical Imaging Systems, LLC v. Visage Imaging, Inc.*,
228 F. Supp. 3d 1331 (N.D. Ga. 2017) ----------------------------------------- 12, 13

*Cabriolet Porsche Audi, Inc. v. Am. Honda Motor Co.*,
773 F.2d 1193 (11th Cir. 1985)----------------------------------------------- 10

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
15 F.3d 1573 (Fed. Cir. 1993) ----------------------------------------------- 10

*Doe v. Menefee*,
391 F.3d 147 (2d Cir. 2004) (Sotomayor, J.) -------------------------------- 10

*Eni US Operating Co. v. Transocean Offshore Deepwater Drilling, Inc.*,
919 F.3d 931 (5th Cir. 2019)------------------------------------------------ 15

*FMC Corp. v. Manitowoc Co.*,
835 F.2d 1411 (Fed. Cir. 1987)---------------------------------------------- 8

*Fontenot v. Mesa Petroleum Co.*,
791 F.2d 1207 (5th Cir. 1986) --------------------------------------------- 16

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
45 F.3d 1550 (Fed. Cir. 1995) --------------------------------------------- 15

*Golf City, Inc. v. Wilson Sporting Goods, Co.*,
555 F.2d 426 (5th Cir. 1977)----------------------------------------------- 15

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) --------------------------------------------- 8

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*,
731 F.3d 1239 (Fed. Cir. 2013)--------------------------------------------- 3

*Regeneron Pharms., Inc. v. Merus N.V.*,
864 F.3d 1343 (Fed. Cir. 2017)-------------------------------------------- 8, 9

*In re Rembrandt Techs. LP Patent Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018)-------------------------------------------- 7, 11

*United States v. Cotto-Flores*,
  970 F.3d 17 (1st Cir. 2020)-------------------------------------------------- 10

*United States v. Wooden*,
  693 F.3d 440 (4th Cir. 2012)------------------------------------------------ 10

*In re Waugh*,
  95 F.3d 706 (8th Cir. 1996) ------------------------------------------------- 10

**Other Authorities**

37 CFR 1.137(a) ------------------------------------------------------------------ 3

9C Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure § 2582 (3d ed. 2022) ------------------------------------------ 15

Rule 52(b) ----------------------------------------------------------------- 15, 16

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '153 patent | U.S. Patent No. 9,908,153 |
| '408 patent | U.S. Patent No. 10,232,408 |
| '810 patent | U.S. Patent No. 10,213,810 |
| '291 application | U.S. Patent Application No. 11/201,291 |
| Amazon | Defendants-Cross-Appellants Amazon.com, Inc., Prime Now, LLC, Whole Foods Market Services, Inc., and Amazon.com Services LLC |
| asserted patents / asserted claims | '153 patent (claims 1 and 6)<br>'408 patent (claims 20 and 30)<br>'810 patent (claim 1) |
| Freshub | Plaintiff-Appellants Freshub, Inc. and Freshub, Ltd. |
| Ikan | Ikan Technologies Inc. and Ikan Holdings LLC |
| RB | Amazon's Response Brief and Opening Brief on Cross-Appeal ("red brief") |
| Patent Office or PTO | United States Patent and Trademark Office |
| YB | Freshub's Response and Reply Brief ("yellow brief") |

# INTRODUCTION

Ikan received the Patent Office's final rejection of the '291 application and the notice specifying that the application would be abandoned if Ikan took no further action. Ikan's prosecuting attorney admitted that he knew for five years that the application had gone abandoned. After Amazon found widespread success with the accused Echo speaker, Ikan's attorney then claimed without basis that the entire period of abandonment had been "unintentional," knowing full well that the Patent Office would deny Ikan's petition to revive unless he swore to that representation. This evidence showed a materially false statement made to the Patent Office, and the single most reasonable inference is that Ikan's attorney intended his false sworn statement to deceive the Patent Office into reviving the '291 application. That was inequitable conduct, and the district court erred by holding otherwise.

Freshub argues that Amazon did not establish clear error regarding falsity or intent to deceive. But there was no evidence at trial that the abandonment was inadvertent or that Ikan's attorney Mr. Weiss had any basis to claim that it was. Mr. Weiss made no attempt to defend the revival petition as truthful, or claim a mistake or some other innocent intent in filing it. The entirety of the record supports an inference of intent to deceive, and in turn a ruling of unenforceability due to inequitable conduct. Mr. Weiss abandoned the '291 application according to his usual practice of declining to respond to an office action, and here he did so after he

received both a final office action and a notice of abandonment—and communicated with his client shortly after receiving each.  Months later, he prepared an assignment that listed the application as abandoned and his client approved that assignment before a notary.  Mr. Weiss admitted he knew throughout the five years that the application was abandoned, yet when he petitioned to revive he did not take the simple step of checking his docket—where client abandonment approvals are recorded as a matter of course—before swearing without basis that the abandonment was inadvertent.

Freshub's response rests heavily on a meritless procedural argument that Amazon "waived" its claim of error.  But that is plainly incorrect.  The district court failed to address key evidence from the trial record that Amazon had pressed throughout the proceedings.  It found that any misrepresentation was "at most negligent" because Mr. Weiss had checked his firm's docketing system to confirm whether his contacts at Ikan had approved abandoning the application, even though Mr. Weiss testified that he had known of the abandonment all along and had in fact "never gone back to look" at the docketing system.  Freshub refers to nine pages of deposition testimony that Amazon provided to the district court after trial as additional context for answers from Ikan's attorney that were presented at trial.  But all the testimony from Ikan's attorney that Amazon cited on appeal was presented during the bench trial.

The Court should reverse or remand the judgment of no inequitable conduct.

## ARGUMENT

## I.   IKAN'S STATEMENT OF UNINTENTIONAL ABANDONMENT WAS FALSE.

To revive the '291 application, Ikan's prosecuting attorney David Weiss certified under oath that "[t]he entire delay"—from Ikan's deadline to respond to a June 2011 final office action rejecting the '291 application, until it filed the January 2017 revival petition—"was unintentional."  Appx 17080; *see* 37 CFR 1.137(a). That claim was unmistakably false.  Ikan received notice that the '291 application was abandoned in January 2012, and months later, confirmed the application's status as abandoned in the notarized assignment document it later filed with the PTO. RB10 (citing Appx17067-17068; Appx16994 (91:15-92:17); Appx17070-17072; Appx16996-16997 (103:23-105:1)).  And it did nothing to reverse its known abandonment of the '291 application for years afterwards, even as it continued to prosecute other patents.  *See id.*, 11 (citing Appx17079-17080; Appx16997-17000 (109:18-22, 109:23-110:6, 110:14-111:2; 119:5-16); Appx17070).[1]

In response, Freshub argues that the December 2012 assignment document listing the '291 application as "Inactive/Abandoned/Expired" does not, standing

---

[1] This five-year delay distinguishes this case from *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239 (Fed. Cir. 2013), where the patentee simply missed a maintenance fee filing deadline by two weeks. *Id.* at 1243.

alone, show that the abandonment was intentional.  YB43.  But this ignores that Mr. Weiss testified he had not made any mistake in letting the '291 application go abandoned, and that he knew when preparing the assignment (and for years afterwards) that the application remained abandoned:

> Q. So at least in your mind, December 2012, you knew that the patent was abandoned, right?
>
> A. Yes.
>
> Q. Right. So there was no -- you didn't wake up in 2017 and realize somehow you had made a mistake by letting this patent go abandoned, right?
>
> A. Correct.
>
> Q. You knew it was abandoned in 2012, right?
>
> A. I think I've answered that.
>
> Q. And you knew it in 2013, in 2014 and 2015, correct?
>
> A. Correct.

Appx17000 (119:5-16); *see also* Appx16997 (105:11-105:18 ("Q: So on … December 4th, 2012, you knew that the abandoned application was abandoned, right? A. Yes."); Appx16999-17000 (118:19-119:4)).  Ikan's attorney knew the application had gone abandoned, confirmed that fact in a notarized agreement, and knowingly let the application remain abandoned for years more.  Appx16997-16998 (105:11-105:18,    108:25-109:1,    109:3-109:4,    109:18-110:6,    110:14-111:2); Appx17070-17072; *see also* Appx16991-16996.  There was not an "absence" of

other evidence beyond the assignment, as Freshub claims. YB43. Rather, there were direct admissions by Ikan's designated representative before the PTO establishing that the abandonment was knowing and deliberate.

Moreover, Freshub called no witnesses and offered no contrary evidence at the bench trial. While Freshub argues that it did not bear any burden of proof requiring it to do so, YB39 n.3, that is beside the point. The result is that the trial record contains no evidence of mistake or inadvertence by anyone associated with Ikan's prosecution of the '291 application at any time. There was thus no conflicting evidence for the district court to weigh against admissions from Ikan's attorney that he received the Patent Office notices, knew the '291 application would go abandoned based on his failure to respond, did nothing about that other than help his client assign the abandoned application to a different Ikan entity, and did not believe at the time of revival in 2017 that he had made any mistakes in allowing the abandonment to occur.

And all other evidence of record tends to show that Mr. Weiss abandoned the '291 application deliberately, according to his usual practice: by simply forgoing a response to an office action after notifying Ikan and obtaining client approval. Mr. Weiss testified that when he has allowed an application to go abandoned, it was at the direction of a client. Appx16988-16989 (23:23-24:4, 24:10-24:13). And shortly after the final office action rejecting the '291 application, and again after the notice

of abandonment, he prepared a letter and email with legal advice concerning the '291 application and transmitted it to the named inventors at Ikan, with attachments. Appx16991 (78:20-78:22, 79:5-79:11); Appx16992-16994; Appx17013-17054 at Appx17020-17021 (Log Entry Nos. 91-92, 98-99). Those communications necessarily concerned the parent '291 application, as Mr. Weiss testified that the privilege log reflects only communications related to the asserted patents, Appx16991-16992 (79:7-19), and Ikan did not file the asserted continuation patents until after revival, Appx52 ('153 patent filed 5/24/17), Appx70 ('810 patent filed 9/14/18), Appx90 ('408 patent filed 8/14/18).[2]

Freshub responds to all this by ignoring the law that holds Ikan is bound by the knowledge and actions of its prosecuting attorney (*see* Appx36) and focusing on the sufficiency of proof concerning Ikan's principal, Mr. Douer—the witness who evaded service and refused to testify. YB45.

First, the district court found that Mr. Douer signed the assignment identifying the '291 application as abandoned and thus "may have been aware" of the

---

[2] Freshub emphasizes Mr. Weiss's decades of experience and role as office managing partner in a prominent law firm. YB42. But that long experience as a patent prosecutor only underscores just how implausible it is that he would have allowed the '291 application to go abandoned without Ikan first instructing him to do so, given the obvious malpractice risks and the established systems and procedures he had in place to avoid such a result. *See* Appx16988-16991 (22:15-22:22, 23:19-24:4, 24:10-24:13, 24:18-24:22, 26:17-26:20, 26:21-27:3, 28:4-28:8, 31:12-31:19, 37:16-37:23, 39:2-39:14, 39:16-39:18, 40:16-40:25).

abandonment, Appx34, and inferred that Mr. Douer avoided testifying on the subject because his "answers might not be very good for [Freshub]," Appx17665-17666 (16:17-17:7).   Freshub argues that the district court deemed the assignment inconclusive because it lists the '291 application among several other assigned patents and applications.  YB43-44; *see* Appx34.  But this Court previously has held that a similar document—a spreadsheet provided to a potential buyer listing an abandoned patent among 30 patents—supported the inference that the recipient knew of the abandonment.  *See In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1274-75 (Fed. Cir. 2018).  Here, the document at issue was a legal assignment rather than an informal communication, and Mr. Douer went before a notary public to execute it.  Appx17070-17072.

Second, Freshub claims that Mr. Weiss never received an *instruction* from Mr. Douer or others at Ikan to abandon the application, YB45 ("Amazon had no evidence that Mr. Weiss actually received an instruction to abandon in this case, *because he did not*." (emphasis added)).  But that misstates the record, as Mr. Weiss neither confirmed nor denied that such an instruction was given, and Freshub refused to provide the contents of the privileged communications that Weiss had with Ikan concerning the abandonment and revival.  *See* Appx17020-17024 (Log Entry Nos. 91-92, 98-99, 108-137).

But Freshub's arguments about Mr. Douer's knowledge ultimately are immaterial because, under the law of this Circuit, Ikan is bound by its attorney's knowledge and conduct. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179 (Fed. Cir. 1995) (affirming inequitable conduct based on evidence that showed attorney was aware of prior art reference that he failed to disclose); *Regeneron Pharms., Inc. v. Merus N.V.,* 864 F.3d 1343, 1346 (Fed. Cir. 2017) (affirming district court's finding of inequitable conduct as to client based on patent prosecutor's withholding of material references).  In other words, while there was ample evidence that *other* individuals associated with Ikan *also* knew of and approved the abandonment, the admissions by Ikan's patent counsel are sufficient to show that the abandonment was deliberate.  Freshub's brief is silent on this point, which is determinative.

## II.    THE SINGLE MOST REASONABLE INFERENCE TO DRAW FROM THE RECORD IS THAT IKAN INTENDED TO DECEIVE THE PATENT OFFICE.

The most reasonable inference to draw from the record is that Ikan's attorney intended to deceive the Patent Office to revive the '291 application.  Mr. Weiss admitted that he had prepared an assignment confirming the abandonment after declining to respond to either of the notices he received from the Patent Office, and he denied that he had made a mistake even though he knew then and for years afterward that the application was abandoned.  Appx17070-17072; Appx16996-

16997 (103:23-105:1); Appx17056-17065; Appx16992-16994 (84:23-85:10, 91:15-92:20); Appx17067-17068; Appx17000 (119:5-16).  Knowing that the abandonment had been intentional, Mr. Weiss then represented the opposite to the Patent Office when seeking to revive the '291 application more than five years later.  Appx17079-17080; Appx17000 (119:5-16).  And knowing that he had a duty to "investigate" the abandonment, Appx17001-17002 (125:3-12; 125:17-23; 127:14-20; 128:13-16), he did not take even the most basic step to confirm whether abandonment was intentional:  checking his firm's docket records that are maintained precisely for that purpose.  *See* Appx16989-16991 (26:17-26:20, 26:21-27:3, 28:4-28:8, 31:12-31:19, 37:16-37:23, 39:2-39:14, 39:16-39:18, 40:16-40:25).

The district court's ruling that Ikan was at most negligent and not deceitful rests on its finding that Mr. Weiss checked his docketing system for an abandonment approval before swearing that abandonment had been a mistake.  *See* Appx30 ¶21. The district court relied on the initial "yes" response that Mr. Weiss provided, *see id.* (citing Appx17002 (136:6-8)), but that conflicts with both his revised answer that he could not in fact recall checking the docket, as well as his other testimony that he had never seen how client abandonment approvals are noted in the system. Appx16990 (39:20-40:1); Appx17002 (137:17-137:19, 138:22-138:23); *see also* Appx16990-16991 (39:2-39:14, 39:16-39:18; 40:16-25).  The district court did not

address or account for this conflicting testimony in its decision, which constitutes reversible error in this Circuit and every other to consider the issue. *See* RB62.[3]

In response, Freshub resorts to misdirection. First, it argues that due to the passage of time it would be *understandable* for Ikan's attorney not to recall checking his docket. YB49. While that may be so, that still supports Amazon's claim of error, as the district court found that Mr. Weiss *did* check the docket, and simply bypassed Mr. Weiss's later clarification that he did not actually recall. Appx30 ¶21.[4] Moreover, Mr. Weiss also testified that he had *never* checked for an abandonment approval on his docket (Appx16990 (39:20-40:1)), a definitive statement that excludes the possibility he previously had done so but just forgotten. On that point, Freshub argues that Mr. Weiss's testimony does not prove the absence of other hypothetical steps to "investigate." YB50. But the supposed docket check was the *only* step found by the district court, and Freshub conspicuously fails to identify any other steps that *were* taken, as it provided no evidence of any such actions at trial.

---

[3] *Carroll Touch, Inc. v. Electro Mech. Sys., Inc*., 15 F.3d 1573, 1580 (Fed. Cir. 1993); *United States v. Cotto-Flores*, 970 F.3d 17, 46 (1st Cir. 2020); *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, J.); *United States v. Wooden*, 693 F.3d 440, 454-55 (4th Cir. 2012); *In re Waugh*, 95 F.3d 706, 712 (8th Cir. 1996); *Cabriolet Porsche Audi, Inc. v. Am. Honda Motor Co.*, 773 F.2d 1193, 1206 (11th Cir. 1985).

[4] To avoid this conclusion, Freshub went so far as to edit Mr. Weiss's testimony by quoting it in reverse order, *see* YB53, presumably to give the impression that Mr. Weiss had changed his "do not recall" answer to a "yes." The opposite occurred. *See* Appx17002 (135:19-23; 136:6-136:8, 137:17-137:19, 138:22-138:23).

Freshub also mischaracterizes Amazon's argument as relying only on the 2012 assignment document and the "bare fact" of how long the application remained abandoned, YB47, ignoring Ikan's attorney's admissions about his own knowledge and conduct. *See* Section I, *supra*. Moreover, Freshub ignores his testimony concerning the assignment itself. Mr. Weiss admitted that the assignment demonstrates his own knowledge of the abandonment as of December 2012, and he confirmed that he recorded the assignment with the PTO the *very same day* that he filed the petition to revive:

> Q. My question is, you are telling the patent office that the abandonment was unintentional for the entire period, correct? That's what you are telling the patent office in [the petition to revive]?
>
> A. Correct.
>
> Q. And -- but you knew, because you filed a document the same day that showed it, that the patent was known to have been abandoned, at least by you, and was listed as abandoned in December 2012, correct?
>
> A. Correct.

Appx16999-17000 (118:19-119:4). In other words, the only information Mr. Weiss reviewed before swearing that abandonment had been "unintentional" was a document showing the opposite. *Cf. In re Rembrandt Techs.*, 899 F.3d at 1275 (spreadsheet identifying patent as abandoned gave rise to inference that party "knew that the … patent had been abandoned and chose not to investigate how it had been revived.").

11

Freshub claims that "[p]articularly egregious facts readily distinguish" *3D Medical Imaging Systems, LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331 (N.D. Ga. 2017) from this case. YB51. But the only distinction Freshub draws is to argue without any evidence that Ikan's counsel "investigated." *Id.*[5] As discussed above, Mr. Weiss admitted that he *knew* the '291 application was abandoned deliberately, yet he still misrepresented that fact, and thus his failure to investigate is merely *additional* evidence of his inequitable conduct. But at the very least, he stands in the same position as the patent owner in *3D Medical*, who knew information indicating a deliberate abandonment but petitioned to revive without performing an investigation of those facts.

---

[5] In support of this claim, Freshub cites to a long string of inapposite testimony, none of which shows that Mr. Weiss performed any "investigation," and further includes his admissions that the abandonment was known for years and was thus deliberate. YB51 (citing Appx16997-17002 (109:23-110:6 (neither Mr. Weiss nor anyone at Ikan attempted to revive the abandoned application in 2012), 110:114-111:2 (Mr. Weiss did not attempt to revive in 2013, 2014, or 2015), 115:6-21 (Mr. Weiss signed the petition to revive on January 20, 2017, with the statement that the entire delay in filing "was unintentional"), 118:16-119:16 (the same day Mr. Weiss filed the petition, he also filed the assignment showing that he knew of the abandonment in December 2012, and he continued to be aware of the abandonment in the succeeding years); 121:3-7, 121:9 (Mr. Weiss provided the assignment to Mr. Douer to sign under penalty of perjury); 127:14-20 (petition to revive states on its face that the applicant must investigate the required statement that the entire period of abandonment was unintentional); 128:13-16 (Mr. Weiss knew that he had a *duty* to investigate); 189:13-190:1 (Mr. Weiss had practiced for 25 years, knew the PTO rules, and claims to "always" comply with them).

## III.    AMAZON DID NOT PRESENT NEW THEORIES AND REVERSAL IS WARRANTED BY THE BENCH TRIAL RECORD ALONE.

Finally, Freshub accuses Amazon of attempting to "manufacture" error by presenting theories and evidence "that were not before the fact finder." YB52-55. Although it paints with a broad brush, Freshub's brief discusses only one supposed example:  Amazon's argument that the district court clearly erred in finding that Ikan's attorney had checked his firm's docketing system for an abandonment approval, given his conflicting testimony that he could not recall doing so, and his further admission that he did not even know how such approvals are noted in the system because he had "never gone back to look." *See id*.  But the bench trial record includes this testimony, and Amazon argued this point throughout the proceedings below, therefore preserving the issue for appeal.  Freshub's claim of waiver is thus meritless.

First, the bench trial record contains the two admissions that the district court failed to address in its decision and that conflict irreconcilably with its findings:

> Q: [W]hen you tell the docketing department that the application has been -- that the client has agreed to let the application go abandoned, how is that noted in the docketing system? What artifact is created?

> A. I don't know. I've never gone back to look.

Appx16990 (39:20-40:1); *see also* Appx16990-16991 (39:2-39:14, 39:16-39:18; 40:16-25).

Q. Did you check for a notification in the docket system if the abandonment was authorized? It's a yes-or-no question. Did you do it?

A. Yeah, I don't recall if I checked the docket.

Appx17002 (137:17-137:19, 138:22-138:23).

<u>Second</u>, Amazon argued these admissions consistently throughout the proceedings. *See generally* Appx17127-17136; Appx17171-17173; Appx-17375-17381; 17614-17622. Amazon's proposed findings of fact asked the district court to find that Ikan's attorney could identify no basis to claim that the abandonment was "unintentional," that he had performed no investigation other than looking back at his 2012 assignment document that shows the opposite, and that the law firm's docketing system could easily have confirmed that Ikan had directed him to abandon the application (Appx17131-1732 ¶¶23-27), yet:

> Nevertheless, Mr. Weiss did not investigate this record before filing the petition to revive the '291 application on behalf of Ikan. In fact, he testified that he was not even familiar with his firm's abandonment approval records because he had "never gone back to look" at them.

Appx17132 ¶28.

And Amazon opposed Freshub's motion for judgment on partial findings with the same arguments, based on these same facts and testimony:

> Plaintiffs argue that Mr. Weiss "determined there was no intentional abandonment" by Ikan. But they include no citations to supporting evidence because there is none. Instead, Mr. Weiss testified that he knew the application was abandoned and did nothing to revive it for over five years. Moreover, there is no evidence or testimony that Mr.

14

Weiss made any "determination": he did not testify that the abandonment was a mistake; he did not testify to any facts showing that he investigated the abandonment; *to the contrary, he had an easy way to confirm in his firm's records whether Ikan intended to abandon the application and Mr. Weiss simply chose not to look.*

Appx17172-17173 (emphasis added) (citation omitted); *see also* Appx17618.

<u>Third</u>, Amazon preserved this issue for appeal. The Fifth Circuit instructs that a district court must make "every effort" to make its fact finding "as adequate as it humanly can be" for appellate review. *See Eni US Operating Co. v. Transocean Offshore Deepwater Drilling, Inc.*, 919 F.3d 931, 935-36 (5th Cir. 2019) (citation omitted); *see also Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433-34 (5th Cir. 1977) (findings "must be sufficiently detailed" to provide "a clear understanding of the analytical process" by which the district court reached them).

Moreover, this Court has suggested that if a party wishes to challenge the completeness of the district court's fact finding, it must file a Rule 52(b) motion requesting additional findings. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1555-56 (Fed. Cir. 1995); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2582 (3d ed. 2022)). If a party does not move under Rule 52(b), it may be limited on appeal to challenging whether the facts the district court found support its legal conclusions. *See Glaverbel*, 45 F.3d 1555-56; Wright & Miller, § 2582.

15

Based on these requirements, Amazon moved under Rule 52(b) for the district court to find subsidiary evidentiary facts that (1) contradict its finding that Ikan's attorney checked his docket to investigate if the application had been intentionally abandoned, and (2) undermine its legal conclusion that the attorney was only negligent. Appx17375-17381. Such a motion was especially appropriate here, where the district court had vacated its original findings and replaced them with a judgment based only on partial findings. Appx38-39. Freshub claims that the proposed facts were improper because they represented "new theories." YB52-55. But they were not new theories, nor even new facts—they were the same points Amazon had pressed all along:

> 13. Mr. Weiss testified that he did not know how approval of an abandonment was noted in the docketing system because he had "never gone back to look."

> 14. And when asked specifically whether he had checked the docketing system for a notification that the abandonment of the '291 application was authorized, Mr. Weiss testified that he could not recall.

Appx17379-17380 (citing Appx16990 (39:20-40:1), Appx17002 (137:17-19, 138:22-23)).[6] Amazon further submitted and asked the district court to consider as

---

[6] Moreover, the case Freshub relies on for its argument—*i.e.*, that Amazon may not ask the district court to make any findings based on the evidence of record other than those requested verbatim in its original proposed findings—provides no actual support for that contention. Instead, it concerned a party that attempted to use a motion to amend to introduce entirely new evidence after trial. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986).

new evidence transcript excerpts that showed the attorney colloquy between witness answers that had been designated for trial. *See* Appx17380 n.2; Appx17384-17393. While these additional excerpts provide helpful context to understand the admissions, Amazon need not and has not sought to rely on them in this appeal, and Freshub's repeated references to them are non-sequitur.

## CONCLUSION

The Court should reverse or remand the judgment that the asserted patents are unenforceable for inequitable conduct.

February 21, 2023                        FENWICK & WEST LLP


                                         By: */s/ J. David Hadden*
                                               J. David Hadden

                                         *Counsel for Defendants-Cross-Appellants*
                                         *Amazon.com, Inc., Amazon.com Services*
                                         *LLC, Whole Foods Market Services, Inc.,*
                                         *and Prime Now, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 28.1(b)(1)(A).   This brief contains 3,975 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief uses a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.


February 21, 2023                                    FENWICK & WEST LLP


                                                     By:  */s/ J. David Hadden*
                                                             J. David Hadden

                                                     *Counsel for Defendants-Cross-Appellants*
                                                     *Amazon.com, Inc., Amazon.com Services*
                                                     *LLC, Whole Foods Market Services, Inc.,*
                                                     *and Prime Now, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a complete copy of REPLY BRIEF OF DEFENDANTS-CROSS APPELLANTS AMAZON.COM, INC., AMAZON.COM SERVICES LLC, WHOLE FOODS MARKET SERVICES, INC., AND PRIME NOW, LLC was served on the attorneys of record via CM/ECF delivery on February 21, 2023.

FENWICK & WEST LLP

By: */s/ J. David Hadden*
　　J. David Hadden

*Attorneys for Defendants-Cross-Appellants Amazon.com, Inc., Amazon.com Services LLC, Whole Foods Market Services, Inc., and Prime Now, LLC*